# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2013

No. 12-11022

Lyle W. Cayce
Clerk

TONIA DENISE J. ROYAL,

Plaintiff - Appellant

v.

CCC&R TRES ARBOLES, L.L.C., A Texas Limited Liability Company,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We learn from this Title VII appeal that Tonia Royal worked at an apartment complex for only four days before she was fired by defendant CCC&R. During this brief time, she was regularly visited in her small office by two maintenance men who hovered over her and sniffed her in a sexually suggestive manner. When she complained to her superiors about this behavior, she was then fired for unspecific reasons.

This appeal arises from the district court's grant of summary judgment dismissing her complaint on the grounds that the alleged misconduct was not objectively unreasonable nor a practice made unlawful by Title VII. Royal only appeals her retaliation claim, that is, her discharge, which she claims resulted

No. 12-11022

from her complaints about sexual harassment. The question presented on appeal is whether the facts of this case present genuine disputes of material fact relating to her claim of harassment based on sex. We hold that genuine disputes of material fact require us to vacate the grant of summary judgment and remand for further proceedings.

I.

A.

Royal was hired by a CCC&R Tres Arboles, L.L.C. ("CCC&R") apartment complex as a leasing manager on Monday, August 3, 2009. She was fired on Thursday, August 6, by her supervisor, Asia Brazil. Royal worked at the only desk in a small front office.

According to Royal, two maintenance workers would enter her office and would hover over her as she sat at her desk and sniff her. This harassment occurred about twelve times, for each worker, over the four days of Royal's brief employment. Sometimes each would come alone, and sometimes they would come together. Royal told them several times that she did not like their behavior. Apparently they were undeterred. The workers would sometimes sniff and hover directly over Royal's head when she was seated. Sometimes the men would sniff even when Royal exited the bathroom.

There were also other incidents of objectionable conduct, one of which involved one of the maintenance workers sitting on a cabinet behind Royal with his legs open. He was an arm's length away and wearing shorts. She alleged that he was visibly aroused. For three to five minutes, Royal reports that he engaged in a "stare-down."

Another incident occurred when Royal was gathering files. Turning around, she encountered the Assistant Manager, Robin Granger, who was standing behind her. She then stumbled into him with her whole body. Brazil, Royal's supervisor, was present when this happened.

2

No. 12-11022

Royal reported her complaint to Granger, the Assistant Manager, on Wednesday. According to Royal, Granger told her to "let it slide" and stated something along the lines of "you know how men are like when they get out of prison."

Brazil held a staff meeting the following day. According to Royal, Brazil held the meeting so that people could "get things off their chest" and speak about whatever was bothering them. Royal spoke up at the meeting and said that she did not like for the men to sniff over her all the time. In response, one of the maintenance men claimed he had a medical condition. The other maintenance man, according to Royal, stated that he "needed to get a release." A different coworker said in response that the maintenance man had "got [his] mind on the wrong thing." Royal took the comment about needing a release as sexual innuendo. After the staff meeting, there was another follow-up meeting with Royal, Brazil, and Granger in which Royal purports to have again asked about the maintenance men's conduct.

That same afternoon, Brazil called Royal into her office and discharged her. According to Royal, Brazil supplied no reason. Brazil states that she made this decision alone, and that Granger had no involvement in it. CCC&R asserted at oral argument that Royal's offenses were swatting a fly harder than was necessary and slamming a door.

## B.

After filing an Equal Employment Opportunity Commission complaint, Royal timely sued CCC&R in the District Court for the Northern District of Texas. She claimed sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 as well as violations of various Texas state laws.

Ruling on CCC&R's motion for summary judgment, a magistrate judge held that the CCC&R employees' conduct was not objectively offensive as required for a Title VII hostile work environment claim. She reasoned that, with

No. 12-11022

the exception of Royal's fall into Granger, no one touched Royal. Additionally, she noted that the "get a release" comment was not directed at Royal. On the retaliation claim, the magistrate judge found that "a reasonable person would not believe that the reported conduct constituted an unlawful employment practice under Title VII." The magistrate judge implicitly found that Royal had failed to make out a prima facie case of retaliation. The district court accepted the magistrate judge's findings and granted CCC&R's summary judgment motion, dismissing all claims.

Royal now appeals. She raises only the 42 U.S.C. § 2000e-3(a) retaliation claim. She fails to brief the other claims she raised in district court, including the hostile work environment claim. Consequently she has waived them. *See Matter of Texas Mortg. Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985); FED. R. APP. P. 28(a)(9)(A).

## II.

## A.

This court reviews a grant of summary judgment de novo. *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 438 (5th Cir. 2012). Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact means that "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the nonmovant. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). *McDonnell Douglas* establishes certain rules

No. 12-11022

for burden shifting between the plaintiff and the defendant employer: (1) first, the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation. *Septimus*, 399 F.3d at 607.

We examine here the plaintiff's prima facie case of retaliation, which is the issue addressed by the magistrate judge and the parties' briefs.[1] In the Fifth Circuit:

> To make her prima facie case, [the plaintiff] must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice under [Title VII]." 42 U.S.C. § 2000e-3(a).

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (internal citations and quotation marks omitted).

It is clear that an adverse employment action occurred here – Royal was fired. Therefore we will move to the other elements of the prima facie case: whether Royal created genuine disputes of material fact that (1) she opposed a

---

[1] Beyond the conclusory statement that "Brazil terminated Plaintiff's employment based upon Plaintiff's inappropriate behavior in the workplace," the CCC&R brief does not address the reasons for Royal's termination. As we have said, at oral argument, CC&R stated that Royal slapped flies with excessive force and slammed a door. These resaons may not be plausible but they are "legitimate." However, Royal produces a genuine dispute of material fact about whether these reasons were pretextual.

No. 12-11022

practice that was unlawful under Title VII,[2] and (2) if so, whether that opposition caused her termination.

B.

We first turn to whether the facts of the crude conduct we have described constitute a practice made unlawful by Title VII. A hostile work environment based on sex may be a violation of Title VII. Such a violation occurs when the plaintiff proves she "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

The parties dispute whether the harassment was based on sex, and also whether the harassment "affected a term, condition, or privilege of employment." *Id.* The relevant standard for the latter issue is whether the sexual harassment is "sufficiently severe or pervasive to alter the conditions of [the victim's]

---

[2] Under Fifth Circuit precedent, "a plaintiff can establish a prima facie case of retaliatory discharge . . . if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices." *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981). We hold that there is a genuine dispute of material fact whether the maintenance men actually violated Title VII. Consequently we do not need to address the plaintiff's "reasonable belief."

We do observe, however, that our precedent is in tension with the plain text of the statute, which appears to require that the employer's practice *actually be unlawful* under Title VII. *See* 42 U.S.C. § 2000e-3(a) (defining unlawful retaliation as "discriminating against any individual . . . because he opposed any practice made an unlawful employment practice by [Title VII] . . . ."). This tension, somewhat unexplained in other circuits as well, has not yet been resolved by the Supreme Court. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (declining to rule on whether the opposition requirement for a retaliation claim can be satisfied with a "reasonable belief" that conduct violates Title VII); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 187 (2005) (Thomas, J., dissenting) ("Although this Court has never addressed the question, no Court of Appeals requires a complainant to show more than that he had a reasonable, good-faith belief that discrimination occurred to prevail on a retaliation claim").

employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).   The harassment must consist of more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).   Relevant factors are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

We hold that there is a genuine dispute of material fact whether the maintenance men's behavior violated Title VII.  Brazil was on notice of the sniffing, the hovering and the "I need a release" comment.  The sniffing and hovering over a woman, by two men, in a small, confined space could be viewed by a reasonable jury as harassment based on Royal's sex.  Indeed, it is difficult to imagine the maintenance men sniffing and hovering over Royal if she were a man.

Several factors could lead a reasonable jury to disagree with CCC&R's contention that the sniffing was harassment but was not *sexual* harassment.  First, CCC&R offered very little in the way of a non-sexual explanation of the conduct.   Further, and perhaps most revealingly, the reactions of Royal's coworkers also suggested that they understood the sniffing to be sexual.  Granger, the assistant manager, reportedly explained the sniffing by saying "you know how men are like when they get out of prison."  The implicit suggestion here is that they crave female companionship.  And one of the maintenance men himself seemed to attribute the sniffing to sexual desire when he stated that he "needed a release" at a staff meeting.

No. 12-11022

The magistrate judge thought it was significant that the "get a release" comment was not directed at Royal. It is easy to conclude, however, that the comment, made at this staff meeting, was addressed to the particular situation. It could be viewed by a reasonable jury that the comment put Brazil on notice that the conduct of which Royal had earlier complained was sexual in nature.

The magistrate judge also concluded that Royal's claims were not pervasive enough under *Meritor* to constitute sexual harassment. *See* 477 U.S. at 67. We think this is error. A reasonable jury could conclude that the described conduct was pervasive: Royal worked in a small office area and was subject to each maintenance man's objectionable conduct approximately twelve times over four days. The only thing interrupting this conduct seems to have been Royal's termination. These menacing acts, which were done over Royal as she was sitting and some of which were done by a man who had previously been in prison, can certainly be seen as "physically threatening," "humiliating," and frequent, three factors that indicate sexual harassment under *Harris*. 510 U.S. at 23.

The magistrate judge highlighted two cases in which we found that the conduct was insufficient to create a hostile work environment. In *Shepherd v. Comptroller of Pub. Accounts of the State of Texas*, 168 F.3d 871 (5th Cir. 1999), the conduct consisted of (1) unwanted touching of the arm; (2) comments that the plaintiff's elbows were the same color as her nipples (3) comments that the plaintiff had big thighs while simulating looking under her dress; (4) standing over the plaintiff's desk several times and attempting to look down her shirt; and (5) a coworker patting his lap and remarking "here's your seat." *Id.* at 872-73.

The second case the magistrate judge noted was *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317 (5th Cir. 2004). There, the court noted the conduct of the offender:

No. 12-11022

> (1) [H]e once made a comment to [the plaintiff] about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he 'grabbed or brushed' against [the plaintiff's] breast and behind, (4) he once held her cheeks and tried to kiss her, (5) he asked [the plaintiff] to come to the office early so that they could be alone, and (6) he once stood in the door of the bathroom while she was washing her hands.

*Id.* at 328.

However, both *Hockman* and *Shepherd* have been called into question by our court in *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428 (5th Cir. 2005). *Harvill* observed that each of these cases had applied the wrong legal standard when both required the conduct to be "severe *and* pervasive," even as the Supreme Court has made clear that the standard is "severe *or* pervasive." *Harvill*, 433 F.3d at 434-35 (emphasizing that "severe or pervasive" is the verbatim standard enunciated in *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)). *Harvill* noted that applying the wrong standard can lead to the wrong outcome:

> Contrary to being an irrelevant distinction . . . the requirement that a plaintiff establish that reported abusive conduct be both severe *and* pervasive in order to be actionable imposes a more stringent burden on the plaintiff than required by law. The Supreme Court has stated that isolated incidents, if egregious, can alter the terms and conditions of employment. *See Faragher*, 524 U.S. at 788 . . . . By contrast, under a conjunctive standard, infrequent conduct, even if egregious, would not be actionable because it would not be 'pervasive.'

*Id.* at 436.

The application of the wrong legal standard is evident in *Shepherd*, where the court noted that "[w]e find . . . that [the coworker's] stares and the incidents in which he touched [the plaintiff's] arm, although they occurred intermittently for a period of time, were not severe." *Shepherd*, 168 F.3d at 874. The court seems to be saying here that the conduct is pervasive but not severe, and so is

not actionable. *Hockman* subsequently relied heavily on comparing its facts to *Shepherd*'s in finding that the work environment at issue was not sufficiently hostile to be actionable. *Hockman*, 407 F.3d at 326-29.

Setting aside, however, the error of *Shepherd* and *Hockman*, the compressed time frame here makes the conduct more pervasive than the conduct in both of those cases. When we found in *Shepherd* that sexually suggestive comments were "mere utterance[s]," we noted that the specified comments were spread out over a period lasting more than a year, obviously diluting their pervasive characteristic. 168 F.3d at 874. The court's approach was similar in *Hockman*, where in holding that the verbal and physical conduct at issue did not violate Title VII, we noted that the enumerated instances of objectionable conduct were scattered over a year and a half period. 407 F.3d at 328. By contrast, the conduct at issue here could be seen as pervasive because it was compacted into a four-day period.

Furthermore, we think that the magistrate judge also overemphasized the lack of physical contact. Certainly, lack of physical contact is a factor to consider. But it is hardly dispositive. It is unsurprising that we have held previously that a reasonable jury could find that coworkers created a hostile work environment despite having no physical contact with the plaintiff. *See, e.g., Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (upholding a jury verdict against a judgment n.o.v. challenge where a coworker "inquired about [the plaintiff's] sexual activity or made comments similarly offensive two or three times a week"); *Glorioso v. Mississippi Dept. of Corrs.*, 193 F.3d 517, 1999 WL 706173, at *4-6 (5th Cir. 1999) (unpublished) (reversing summary judgment on a retaliation claim that was based on the plaintiff's perception that she had been sexually harassed when a coworker called her a "bitch").

No. 12-11022

We conclude that Royal has shown a genuine dispute of material fact whether the maintenance men's described behavior created a hostile work environment based upon sexual harassment violating Title VII.

C.

We next consider whether Royal has shown a genuine issue of disputed material fact regarding a causal link between Royal's complaint of harassment and her termination. "It is well established that, in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks and citation omitted). Our analysis here focuses on Brazil, the sole decisionmaker terminating Royal. At the summary judgment stage, Royal must create a genuine issue of disputed material fact whether Brazil knew of Royal's opposition to the sexual harassment. *See Gollas v. Univ. of Texas Health Sci. Ctr. at Houston*, 425 F. App'x 318, 324 (5th Cir. 2011).

Royal was fired by Brazil the same day she complained about the maintenance men's behavior in two meetings that Brazil and Granger attended. Additionally, Brazil was there when one of the maintenance men stated "I need a release." Consequently, Brazil was aware of the conduct of the men and the "I need a release" comment. The temporal link between the concerns Royal raised at the meetings and Royal's termination strongly supports a causal link. *See, e.g., Glorioso*, 1999 WL 706173, at *4 (holding that a supervisor's recommendation of termination within a week after the plaintiff raised her grievance presented a genuine issue of material fact regarding causation).

Furthermore, a genuine dispute of material fact was created whether Granger independently notified Brazil about Royal's complaints to him about the maintenance men. Although Brazil declared that Granger did not inform her of Royal's complaints, it is unclear whether Brazil's declarations resolve the

11

matter.   For instance, Brazil also declared that she did not remember a complaint about the sniffing noises at the staff meeting, and that she has no recollection that the second meeting between Royal, Granger and herself had occurred.

It is unclear why, at that particular time, Brazil would have held a staff meeting for people to "get things off their chest[s]" if she had been ignorant that Royal was encountering difficulties, when Royal's difficulties were the basis for the meeting, as far as the record shows.  Also, Royal stated that on one occasion Brazil hovered over her, which Royal understood as Brazil "join[ing] in on the fun."  This, too, suggests that Brazil knew of Royal's complaints to Granger.

In sum, the facts construed most favorably to the nonmovant demonstrate that a reasonable jury could find that Brazil knew about the hovering, sniffing, and the "need a release" comment.  A genuine issue of material fact regarding causation is thus raised.

## III.

We make clear that the only part of the district court's judgment that has been appealed and, consequently before us, is the dismissal of Royal's retaliation claim.  In this respect, we hold that Royal has shown genuine issues of disputed material facts whether the described conduct created a hostile work environment in violation of Title VII, and, if so, whether her complaint about that conduct was causally related to her termination.  Thus, because she has made out a prima facie case on her retaliation claim, further proceedings not inconsistent with this opinion are required, and accordingly the judgment of the district court is, in this respect, VACATED and the case REMANDED for further proceedings.

VACATED and REMANDED.