# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11209
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 15, 2015

Lyle W. Cayce
Clerk

CHRISTIE LAWSON,

     Plaintiff - Appellant

v.

PARKER HANNIFIN CORPORATION,

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
No. 4:13-CV-923

Before KING, JOLLY, and HAYNES, Circuit Judges.

PER CURIAM:*

     Plaintiff–Appellant Christie Lawson appeals the district court's order granting summary judgment for Defendant–Appellee Parker Hannifin Corporation. Lawson argues that the district court erred by finding that her sexual harassment claim was not timely filed. Additionally, Lawson argues that the district court further erred by finding that she had failed to establish

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-11209

a prima facie case of unlawful retaliation. For the following reasons, we AFFIRM the judgment of the district court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In April 2010, Defendant–Appellee Parker Hannifin Corporation hired Plaintiff–Appellant Christie Lawson to serve as an administrative assistant specialist in Fort Worth, Texas. Lawson reported to Grant Puckett, the Technology Team Leader for Engineering. Mark Hanlon was employed by Parker Hannifin in California as the Technology Team Leader on the Winovation Team, which worked on a project called the "Fuel Cell Project." As part of her job duties, Lawson provided administrative support for a number of Parker Hannifin employees, including employees assigned to the Fuel Cell Project in Fort Worth.

Lawson contends that soon after she began her employment at Parker Hannifin, between July and October 2010, Hanlon acted inappropriately towards her. Lawson contends that Hanlon discussed with her the details of the women he pursued during his travels. She further contends that Hanlon inappropriately pressed his body up against hers on a number of occasions. Lawson asserts that Hanlon kissed her on the side of the mouth at the end of a dinner she had asked him to attend with her and her boyfriend. She further asserts that on a work trip to Ohio, Hanlon invited her to his hotel room to share peaches and that he said he would take care of her when she said she did not feel well. Lawson alleges that Hanlon called her gorgeous and that he would hug her almost every time he came to the Fort Worth office. Lawson contends that in July or August of 2010, she first reported Hanlon's conduct to Puckett, her supervisor. Puckett told Tracy Dittmeier, Central/Group HR Team Leader, that Lawson had expressed that she was uncomfortable going to lunch with Hanlon.

2

No. 14-11209

In December 2010, Hanlon traveled to the Fort Worth office.  Upon arrival, Hanlon approached Lawson's desk and said "[h]ey, beautiful."  He then asked her to stand up and hug him.  Andy Stevenson, a Parker Hannifin employee, witnessed this interaction and reported it to Dittmeier.  Stevenson noted that Lawson told him that she was not comfortable with how Hanlon had acted.  Stevenson further reported that Lawson had told him that Hanlon had placed his hand on her hip at the copy machine and said to her, "looking good."

On December 22, 2010, Dittmeier spoke on the telephone with Lawson. During that telephone call, Lawson reported that on December 14, 2010, Hanlon had approached her while she was standing at the printer and placed his hand on her hip and whispered in her ear, "looking really good."  Lawson also stated that Hanlon invaded her space and hugged her whenever he traveled to the Fort Worth office.  Lawson also reported to Dittmeier that Hanlon had made her feel uncomfortable during the business trip to Ohio, which took place the week of August 23, 2010.  Dittmeier    conducted    an investigation and concluded that Hanlon had engaged in inappropriate behavior.  In January 2011, Parker Hannifin took the following steps in response to Dittmeier's investigation: it moved Lawson out of the role of providing administrative support for Hanlon, with no loss of pay, change in hours, or change in job title; it gave Hanlon a final written warning; it stripped Hanlon of his direct reports and his own office; and it offered Lawson paid time off in order to take advantage of the Employee Assistance Program.  Lawson was told that she would no longer support Hanlon's administrative needs. Lawson states that after Stevenson made his report in December 2010, Hanlon

3

did not make any more inappropriate remarks, nor did he touch her in any way.[1]

On April 7, 2011, Lawson visited an Equal Employment Opportunity Commission office and completed an Intake Questionnaire. On the Intake Questionnaire, she stated that the reason for her claim of discrimination was that she was "sexually harassed." However, on the part of the Intake Questionnaire which asks what Lawson wanted the EEOC to do with the information she provided, Lawson failed to check the box that states "I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination described above."

On May 17, 2011, Lawson took leave from Parker Hannifin. She returned from leave on August 9, 2011. On August 17, 2011, Christina Zuluaga Cortez, an HR Administrative Specialist, attempted to contact Lawson to get her assistance in transitioning a new employee into the office. Cortez was unable to find Lawson. On August 19, Cortez discovered that Lawson had left work early. When asked about how many hours she had worked on August 17th, Lawson told Cortez that she had worked from 11:30 a.m. to 7:45 p.m. Cortez thereafter conducted an investigation, which included a review of Lawson's timecard, the Fort Worth office's parking garage records, interviews with other employees who had knowledge of Lawson's time spent at work, and emails sent by Lawson. Based on this investigation, it was determined that Lawson did not arrive in the office at 11:30 a.m. on August 17th, and other workers confirmed that she left before 7:45 p.m. Cortez presented her findings to Dittmeier and Joan Clark, Parker Hannifin's Vice President of Human

---

[1] Hanlon was terminated by Parker Hannifin on August 22, 2011, for what appear to be unrelated reasons.

No. 14-11209

Resources. On September 12, 2011, Lawson was terminated by Parker Hannifin for falsifying her timecard.

On October 7, 2011, Lawson filed a charge of discrimination with the EEOC. On her Charge of Discrimination form, she noted that the type of discrimination that she faced was "retaliation." In her discrimination statement, she noted that "I believe I was retaliated against . . . because I filed a complaint of sexual harassment against Mark Hanlon." On January 5, 2012, the EEOC sent Lawson a Dismissal and Notice of Rights form, which stated that "[y]ou may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court."

On July 5, 2012, Lawson filed an Original Petition in the 153rd Judicial District Court, Tarrant County, Texas, alleging that Parker Hannifin had violated Texas Labor Code § 21.051, claiming sexual harassment and retaliation. Parker Hannifin removed the action to the United States District Court for the Northern District of Texas, and on October 9, 2014, the district court granted Parker Hannifin's motion for summary judgment. Lawson timely appealed.

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We construe "all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d

5

No. 14-11209

260, 266 (5th Cir. 2010) (internal quotation marks omitted). Nevertheless, summary judgment may not be defeated by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted).

## III.   DISCUSSION

Lawson argues that her sexual harassment claim is not time-barred because the investigation into her timely retaliation charge filed with the EEOC could reasonably be expected to encompass her sexual harassment charge. She further argues that there is substantial evidence supporting her retaliation claim. For the following reasons, we disagree.

A complaint under the Texas Commission on Human Rights Act (the "TCHRA") "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a) (West 2013). Accordingly, "Texas law requires that a complaint of unlawful employment practices be filed with the [EEOC] or the [Texas Workforce Commission] within 180 days after the alleged unlawful employment practice occurred." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam). "This time limit is mandatory and jurisdictional." *Id.* In determining when the unlawful employment practice occurred, "'[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts become most painful.'" *Id.* (alteration in original) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)).

The TCHRA "makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin." *City of San Antonio v. Cancel*, 261 S.W.3d 778, 782–83 (Tex. App.—Amarillo 2008, pet. denied); *see also* Tex. Lab. Code Ann. § 21.051 (West 2013). "Sexual harassment is one form of prohibited employment

No. 14-11209

discrimination." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (footnote omitted).

We first address Lawson's sexual harassment claim and hold that it is time barred. Lawson alleges that the final instance of sexual harassment by Hanlon occurred on December 15, 2010. Lawson filled out an EEOC Intake Questionnaire on April 7, 2011 and stated that the basis for her claim of discrimination was that she was "sexually harassed." However, she did not check the box which indicated that she wanted to file a charge of discrimination. Furthermore, the record reveals that when Lawson discussed her situation with an EEOC employee, she indicated that she had "decided not to file" a charge.[2] Moreover, there is no evidence that Parker Hannifin received notice of Lawson's visit to the EEOC in April 2011. *See Harris v. Honda*, 213 F. App'x 258, 262 (5th Cir. 2006) (unpublished) (per curiam) ("Harris has failed to provide any evidence that Honda received notice . . .; in light of these facts, we find that the intake questionnaire cannot substitute for a proper charge."). Accordingly, Lawson did not file an EEOC charge on April 7, 2011. While it is undisputed that on October 7, 2011 Lawson filed a retaliation charge with the EEOC, 297 days elapsed between that charge and the alleged last instance of sexual harassment. Therefore, Lawson did not comply with the requirement that a complaint under the TCHRA be filed "within 180 days after the alleged unlawful employment practice occurred." *Specialty Retailers, Inc.*, 933 S.W.2d

---

[2] The record also contains the October 7, 2011 notes made by an EEOC employee during an interview with Lawson. The notes state that Lawson previously visited the EEOC, and "[a] charge was not taken at that time because [Lawson] had not complained about sexual harassment for some time and when she did, [Parker Hannifin] took immediate and appropriate action."

7

No. 14-11209

at 492. As such, it is irrelevant whether the October 7 charge encompassed the sexual harassment claim.[3]

We next turn to Lawson's retaliation claim. It is unlawful for an employer to retaliate against an employee who: "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055 (West 2013). "A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).[4] Under the *McDonnell Douglas* framework, the employee must first establish a prima facie case of retaliation. *Id.* In order to establish a prima facie case of retaliation, the plaintiff must show that: "(1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Gorman*, 753 F.3d at 170. Once the prima facie case is established, "the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action." *Royal*, 736 F.3d at 400. If the employer can meet this burden, the employee must "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)

---

[3] Lawson does not allege that her termination, in and of itself, was an example of sexual harassment. It is undisputed that the last instance of alleged sexual harassment occurred in December 2010.

[4] We note that "[t]he substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999)).

No. 14-11209

(internal quotation marks and brackets omitted). "[W]here the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).

Here, Parker Hannifin has advanced a legitimate non-retaliatory reason for Lawson's termination—timecard fraud. Lawson argues that there is evidence to establish that the reason for her termination was pretextual, but we disagree.[5] First, Lawson points to a memo written by Michel Loignon, a Team Leader at Parker Hannifin, which is allegedly about Hanlon. The memo states under the heading "Liability" that there is a "[c]oncern about the likelihood of [a] re-occurrence of previous events (e.g. sexual harassment complaint)." The memo also states that "[a] re-occurrence is possible and would put Parker in a difficult position since that possibility was known and not enough was done about it." This memo provides no support for the proposition that Parker Hannifin's reason for terminating Lawson was pretextual. All it establishes is that an employee of Parker Hannifin was concerned about Hanlon and the liability that could befall on the company as a result of his actions. It does not mention Lawson, nor does it mention anything about timecard fraud. Accordingly, this memo does not create a genuine issue of material fact as to whether Parker Hannifin's reason for terminating Lawson was pretext for discrimination.

---

[5] Although the district court granted summary judgment because it found that Lawson had failed to establish a prima facie case of retaliation, we decide the issue by holding that Lawson has failed to meet her burden to show that Parker Hannifin's legitimate, non-retaliatory reason for her termination was pretextual. *See Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) ("[T]his court may affirm a judgment upon any basis supported by the record.").

Second, Lawson argues that Parker Hannifin's conduct in dealing with Lawson's complaints relating to Hanlon is evidence of pretext. However, the record reveals that Parker Hannifin took steps to address Hanlon's conduct, including conducting an investigation based on Lawson's complaints, which resulted in a finding that Hanlon had "contributed to the creation of a hostile work environment." As a further result of the investigation, Hanlon was given a "final written warning." Furthermore, Lawson was no longer required to provide Hanlon administrative support and was provided with paid time off to participate in Employee Assistance Program counseling. This evidence does not create a genuine dispute of material fact that Parker Hannifin's reason for Lawson's termination was pretextual.

Third, Lawson points to the fact that she had previously received high praise during a performance review conducted on April 4, 2011. The performance review that Lawson cites is generally positive. It took place, however, prior to her employer's discovery that she had been fraudulently reporting her hours. Further, the review notes that she should be sure to let her supervisors know when she plans to be out of the office (which she failed to do in August 2011). Given that Lawson's timecard fraud took place in August 2011, the earlier performance review does not create a factual issue precluding summary judgment.

Finally, Lawson attacks the thoroughness of the investigation into her attendance and the motives of the Parker Hannifin employees who conducted it. This court has previously noted that the Texas Supreme Court has "held that to establish an investigation into an alleged violation of a workplace policy was a pretext for discrimination it is 'not sufficient [for the plaintiff] to present evidence that the . . . investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion.'" *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004) (alteration in original) (quoting *Wal-Mart Stores, Inc.*

*v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003)).  Lawson argues that there was no evidence to establish when she left work on August 17, 2011.  However, it is Lawson, not Parker Hannifin, who bears the burden at the pretext stage of rebutting Parker Hannifin's non-discriminatory justification.  *See Royal*, 736 F.3d at 400 ("[T]he burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation.")  As such, she may not merely point to a lack of evidence on the part of Parker Hannifin.  She must produce evidence showing that Parker Hannifin's reason for her termination is unworthy of credence, *Wallace*, 271 F.3d at 220, which she fails to do.  Accordingly, the district court did not err when it ordered summary judgment for Parker Hannifin because Lawson has failed to establish a genuine dispute of material fact as to whether the legitimate, non-retaliatory reason advanced for her termination was pretextual.[6]

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[6] Lawson also seems to allege that Parker Hannifin's policies require it to take disciplinary action short of termination and its failure to do so is evidence of pretext. However, Lawson mischaracterizes the record, as Parker Hannifin's policies make explicit that it can take any range of disciplinary actions based on the severity of the offense.