# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30993

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2015

Lyle W. Cayce
Clerk

GURNEY ALFRED,

Plaintiff–Appellant,

versus

STATE OF LOUISIANA DEPARTMENT OF CORRECTIONS,

Defendant–Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-801

Before REAVLEY, SMITH, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Gurney Alfred appeals a summary judgment in his Title VII retaliation suit against the Louisiana Department of Corrections ("DOC"). Because he has not adduced evidence creating a fact issue regarding pretext, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30993

I.

Alfred was a Master Sergeant at the DOC.  In May 2010, he filed a grievance against his supervisor, Captain Warren Lemoine, alleging that he had been reassigned to less desirable duties because he had complained to Lemoine and had sent letters to Lemoine's superiors.  Lemoine allegedly entered Alfred's office and shouted at him for filing a grievance.  In June 2010, Alfred filed a complaint with the EEOC alleging Title VII violations.

In the wake of the complaint, Alfred allegedly suffered several acts of retaliation.  The one relevant to this appeal is his being disciplined and ultimately discharged for violating the prison's document-falsification policy.

One of Alfred's responsibilities was letting inmates out for their one hour of yard time.  An inmate could refuse to take yard time, in which event he was required to sign a log called a Yard Refusal Form ("YRF"), which has columns titled "Inmates Signature," "Date," "Time," and "Officer Signature."  Inmates would sometimes refuse to sign the YRF as well.  As explained below, the parties dispute the procedure corrections officers were required to follow when an inmate refused to sign.

On July 15, 2010, Alfred turned in a YRF on which he had written in all of the refusers' names in the "Inmates Signature" column.  He did not indicate that the inmates had refused to sign or that he had written their names in the signature column.  Nor did he get another corrections officer to sign or initial the form to indicate that the inmates had refused to sign.  Although all of the inmate names were written in the same hand, there was no other indication on the form that the inmates had refused to sign and Alfred had written in their names.

On October 5, Alfred received a VR-1, a form that documents a disciplinary infraction.  It notified him that was being written up for violating the

No. 14-30993

document-falsification policy for writing in the inmates' signatures on the July 15 YRF. At Alfred's first-level hearing on October 21, the assistant warden recommended termination based on the seriousness of the charge. After an appeals process, DOC terminated Alfred on November 29.

II.

Alfred sued for discrimination and retaliation in violation of Title VII. The district court granted summary judgment to the DOC on all claims. It assumed that Alfred had made out a *prima facie* case of retaliation. Under the framework for Title VII retaliation suits, the burden shifted to the DOC "to articulate a legitimate, nondiscriminatory reason for its termination." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). The court determined that DOC had met that burden by showing that Alfred had violated their records-falsification policy.

At that point, Alfred could avoid summary judgment only by "adduc[ing] evidence that [the employer's] proffered reason for his termination was merely a pretext for [ ] discrimination." *Id.* at 685. He must show that he "would not have been terminated 'but for' engaging in protected activity." *Id.* Although but-for causation is also part of a *prima facie* case, "the burden here is more stringent" and requires the plaintiff to reveal "a conflict in substantial evidence on the ultimate issue of retaliation." *Id.* (quotation omitted). The district court concluded that Alfred had not shown that the records-falsification explanation was a pretext for discrimination.

III.

Alfred appeals the summary judgment on his retaliatory-discharge claim, contending that he adduced sufficient evidence to create a fact issue on pretext. "This court reviews a grant of summary judgment de novo." *Royal v.*

No. 14-30993

*CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*  There is a genuine dispute of material fact only if "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quotation omitted).

To show pretext, Alfred makes essentially three groups of contentions. First, he challenges the existence of the falsification policy and its application to his actions.  Second, he points to inconsistencies in the evidence regarding when Lemoine actually filled out the VR-1.  And third, he highlights the close temporal proximity between filing his grievance and EEOC charge and being subjected to the disciplinary procedure.

## A.

Alfred was terminated for violating the document-falsification policy regarding how he filled out the YRF.  The parties dispute whether there was an established procedure for noting when an inmate refused to sign a YRF. The DOC produced affidavits of other employees attesting that officers were supposed to note on the form that an inmate had refused to sign, whereas Alfred asserted that there was no such requirement.

It is unnecessary to resolve exactly what the DOC's policy was for noting an inmate's refusal to sign.  It is uncontested that the DOC had a policy against falsifying records, and Alfred has presented no evidence to show that the DOC did not believe he had falsified the entries on the YRF.  The DOC was presented with a YRF on which all names in the "inmate signature" line had been written in the same hand, without any notation that Alfred had written the names in because the inmates had refused to sign.  The DOC could reasonably believe that he had falsified the YRF in violation of policy.

4

No. 14-30993

Alfred has presented no evidence showing that the DOC did not hold this belief.[1]  If he is challenging the document-falsification justification as pretext because he disagrees that he falsified records, his claim fails because he is disputing the accuracy of his employer's belief, not its genuineness.  *See Haverda v. Hays Cnty.*, 723 F.3d 586, 596 n.1 (5th Cir. 2013).  And if he is challenging the justification because he thinks the policy cuts too broadly or is otherwise excessively restrictive if it reaches his conduct, his claims fails because he is challenging the wisdom of the DOC's policy, not whether it was applied in a retaliatory fashion.  "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."  *LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

## B.

The second set of facts giving rise to a pretext inference, according to Alfred, is the inconsistency in the evidence regarding the timeline leading to his VR-1's being issued.  One discrepancy on which he relies is an inconsistency in Lemoine's testimony regarding the timeline of Alfred's involvement.  There is some evidence that Lemoine actually did fill out the VR-1 on July 19, allegedly the day the falsified reports were brought to his attention.  In an affidavit, Lemoine stated that he "received the Yard Refusal Form" from Serena Griffey, the secretary for Camp RC, on July 19.  He stated that he wrote the VR-1 for falsifying documents and that he disciplined Lieutenant Myers for his failure

---

[1] Alfred points out that Sergeant Lenon Johnson testified that corrections officers were instructed to print inmates' names on the YRF if the inmates refused to sign.  Johnson testified, however, that guards were not supposed to write the inmates' names in the inmate-signature column, which is what Alfred did.  Johnson also stated that guards needed to note on the form that the inmate refused to sign, and they were supposed to get a second officer to verify the refusal on the sheet. Johnson's testimony does not create a fact issue on whether writing the inmates' names in the inmate-signature column would be seen by the DOC as attempted falsification.

5

to catch the falsification that same day; Myers was responsible for reviewing and initialing the YRF before Griffey received it.  Lemoine did not specify the date on which he wrote or signed the VR-1, but he did say that he punished Myers "as a result of the VR-1" that he issued to Alfred, and the record includes a notice from Myers's personnel file stating that he was counseled on July 19 at 5:15 a.m.   That matches the affidavit submitted by Assistant Warden Joseph Lamartiniere, who stated that Lemoine had prepared the VR-1 on July 19. And the Deputy Warden, Leslie Dupont, submitted an affidavit stating that he had put Alfred on forced leave with pay in July "because he was issued two VR-1s," of which one was the document-falsification VR-1.

Alfred contends that several pieces of evidence are inconsistent with the above account and create a fact issue regarding when Lemoine found out about the violation.  First, Lemoine's signature on the VR-1 is dated "9-22-10."  The DOC did not present evidence explaining why Lemoine signed the VR-1 so long after he was first notified of the violation. Lamartiniere's affidavit indicates that the length of time between preparing and signing the VR-1 in this case was a delay that was out of the ordinary.

Second, in a deposition taken before he filed his affidavit, Lemoine gave testimony that could be read to say that he did not receive the Yard Refusal Form until September:

Q. — and you signed this [VR-1] September the 22nd, 2010 relating to an incident that was back two months earlier.
A. Yeah, because that's when I got the paperwork back.
Q. What paperwork are you talking about?
A. The yard refusal form.
Q. That's the — what Ms. Griffey brought to you?
A. Right.
Q. So is that normal, that those yard refusal forms just sit around for two months before they're brought to your attention?
A. She was the secretary for three camps, so she has a lot — lots of paperwork coming in every day.

6

Lemoine stated that he "got the paperwork back" on September 22 and that the paperwork was the YRF. He did not state from whom he got the form back or what he meant when he said he got the form "back." Alfred contends that testimony shows Lemoine received the YRF in the first instance in September, contradicting the other evidence discussed earlier.

The third inconsistency is the timing of Lemoine's counseling of Myers. Lemoine's affidavit states that he counseled Myers the same day he received the YRF, July 19, and the form documenting the counseling is signed and dated July 19 at 5:15 a.m. When asked in a deposition whether he was "was aware of Captain Lemoine actually having received" the YRFs from Griffey, however, Myers stated that he "was showed the next morning when [Lemoine] received them from her," right before his counseling meeting. The testimony is not clear, but it could be read to show that Myers received counseling the day after Lemoine received the YRFs instead of the same day. Relatedly, Alfred points out that the VR-1 says Lemoine received the falsified forms at approximately 5:15 a.m., yet the counseling-documentation form from Myers's file is also dated July 19, 5:15 a.m., which makes the timeline implausible because those two events purportedly happened in sequence.

The questions raised by those inconsistencies are insufficient to preclude summary judgment because they do not create a genuine dispute about a *material* fact. At most, the preceding discussion shows there is a factual dispute regarding when Lemoine first received notice of the records-falsification violation and when he decided to write the VR-1. "[T]emporal proximity alone, when very close, can in some instances establish a *prima facie* case of retaliation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). But temporal proximity is insufficient by itself to show but-for causation, which is the relevant requirement for pretext. *Id.*; *see also Medina*, 238

F.3d at 685 (stating that plaintiff must show but-for causation at pretext stage). Alfred has not demonstrated how the timeline inconsistencies provide any support for his narrative beyond potentially placing events at times that better support his theory of retaliation. Because temporal proximity is insufficient, neither the inconsistencies nor the established, short period of time overall between Alfred's alleged protected activity and his termination renders the summary judgment erroneous.

AFFIRMED.