# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30866
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 31, 2016

Lyle W. Cayce
Clerk

WILLINDON JORDAN,

      Plaintiff - Appellant

v.

TURNER INDUSTRIES GROUP, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-342

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Willindon Jordan appeals the district court's grant of summary judgment dismissing his Title VII retaliation claim. The issue on appeal is whether the district court correctly concluded that Turner Industries Group, LLC had a legitimate, non-retaliatory reason for terminating his employment. We agree with the district court and AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30866

Jordan, who was black, was employed as a laborer by Turner, which provides specialized services in the construction and petrochemical industries. He worked as a "turnaround" employee, staffed at various client sites on a temporary basis. The length of his employment on any particular job depended on Turner's service contract with each particular client. During his employment with Turner, Jordan also served as the Labor Steward for the Construction & General Laborers Local Union Number 1177.

Jordan's last job for Turner began in April 2011. Turner was contracted to renovate and bring back online the ammonia unit at PCS Nitrogen; work was expected to last until March 2013. As part of the project, Jordan was employed to supply drinking water to the other workers at the facility. Jordan contends that he was the "lead man" for the water team, and thus was also responsible for identifying potential work-related hazards at the job site. On January 13, 2013, the general foreman brought Jordan to the safety office to show him a rope resembling a hangman's noose that had been found on a scaffold. Jordan did not independently report the rope to any supervisor, and he did not accompany the foreman to report the incident to the site manager.

The next day, at Turner's weekly morning safety meeting, Jordan expressed his concern that Turner had not taken any apparent action regarding the rope. He contends that his dissatisfaction was heightened because of a similar 2012 incident involving a noose, and because of Turner's failure to follow its own "zero tolerance" policy regarding discrimination. After the meeting, the supervisor, Michael Foreman, and the site manager, Dan Davis, approached Jordan and expressed their "offense" at his statements.

On January 16, 2013, Turner's Human Resources representative visited the work site and conducted an investigation regarding the rope incident, including interviewing Jordan. On January 29, 2013, Turner terminated

2

No. 15-30866

Jordan's employment, citing their standard reduction of force for turnaround employees. Jordan claimed that he was fired in retaliation for speaking out against Turner's discriminatory practices. After exhausting his administrative remedies, Jordan filed a Title VII discrimination lawsuit against Turner based on race and retaliation; he later agreed to dismiss his discrimination claim. Turner then filed a motion for summary judgment as to Jordan's remaining retaliation claim, which the district court granted.

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). Summary judgment is proper if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Jordan argues that he was fired as retaliation for opposing Turner's failure to enforce its discrimination policy and for his participation in the investigation of the noose incident. This court has held that the *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims. *See Royal*, 736 F.3d at 400 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once an employee establishes a prima facie case there is an inference of retaliation. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. The employee then bears the burden of establishing that the employer's stated reason is actually a pretext for unlawful retaliation. *Id.* Accordingly, the question on appeal is whether Jordan has shown that the adverse employment decision would not have occurred but for his participation in the allegedly protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

The district court found, and the parties do not dispute, that Jordan established a prima facie case. Turner responded with a legitimate,

No. 15-30866

nondiscriminatory reason for firing Jordan: the winding down of the PCS Nitrogen project and the resultant rolling layoffs. *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (explaining that a reduction-of-force is a legitimate and nondiscriminatory reason for discharge).

Jordan alleges that his employment record and his status as "lead-man" expose the retaliatory impetus of Turner's decision to lay him off. He was fired before other members of the water team and reasons that Turner deviated from its standard practice for layoffs. In support, he cites the testimony of Davis that "you keep your best people," and the testimony of Willie Dorsey, another Turner laborer, that a lead man is usually one of the last employees laid off at a job site. But, as Turner points out, Dorsey further testified that he was one of the last employees at the site, and that by the time he was laid off, "just about all of the lead men [were] gone"—which belies Jordan's assertion that lead men were not let go before crew members. Moreover, Jordan fails to identify any employment policy or protocol that lead men were laid off last.

Turner offered the testimony of Lee Joseph Paille, the supervisor of the water crew. Paille stipulated that layoffs occurred several times a week beginning in late 2012. Prior to dismissing Jordan, he laid off two other laborers on the water crew, and he declared that he made the decision to terminate Jordan as part of the ongoing reduction of force. Five other employees, including three laborers, were laid off the same day as Jordan. Turner also presented evidence that, as the PCS Nitrogen job wound down, it laid off 116 employees between January 29 and March 8, 2013. The diminishing number of overall employees led to fewer water crew laborers.

Jordan provides no material evidence that Turner's proffered reason for his termination is pretextual, and that his statements at the safety meeting and participation in the rope investigation were the "but-for" cause of his

4

termination. He only speculates as to motive, and offers no evidence that his protected activity caused Turner's employment decision. We AFFIRM.