Roberto GUADALAJARA, Plaintiff,

v.

HONEYWELL INTERNATIONAL, INC., Defendant.

EP–15–CV–00135–KC

United States District Court, W.D. Texas, El Paso Division.

Signed 12/16/2016

Enrique Chavez, Jr., Heather V. Banahan Nease, Chavez Law Firm, El Paso, TX, for Plaintiff.

Clara B. Burns, Kemp Smith LLP, El Paso, TX, Leah S. Freed, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Phoenix, AZ, Christopher Champion Wike, Ogletree, Deakins, Nash, Smoak & Stewart, PC, Austin, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Honeywell International, Inc.'s, Motion for Summary Judgment ("Defendant's Motion"), ECF No. 35, and Plaintiff Ricardo Guadalajara's Motion for Partial Summary Judgment and Memorandum in Support ("Plaintiff's Motion"), ECF No. 38, in the above-captioned case (the "Case"). After due consideration, the Court **DENIES** Defendant's Motion. The Court also **DENIES** Plaintiff's Motion.

## I. BACKGROUND

### A. Factual Background

Unless otherwise indicated, the following facts are undisputed. Defendant Honeywell International, Inc. ("Defendant" or "Honeywell"), hired Plaintiff Ricardo Guadalajara[1] ("Plaintiff") on September 10, 2012, as a full-time warehouse security employee in its El Paso, Texas, facility.[2] *See* Def.'s Proposed Undisputed Facts, Def.'s Mot., App., ¶ 1 ("Defendant's Facts"), ECF No. 36; Pl.'s Resp. to Def.'s Proposed Undisputed Facts & Mot. to Strike ¶ 1 ("Plaintiff's Response to Defendant's Facts"), ECF No. 42-1.

In December of 2012, Defendant granted Plaintiff's request to transfer from the security department of the warehouse to the Honeywell Processing Solutions ("HPS") department. Pl.'s Proposed Undisputed Facts, Pl.'s Mot. ¶ 5 ("Plaintiff's Facts"), ECF No. 38; Def.'s Resp. to Pl.'s

---

1. The Court notes that the caption in this case is incorrect because Plaintiff is named incorrectly in his state court Petition. Plaintiff's first name is Ricardo, not Roberto.

2. Plaintiff began as a temporary employee at Honeywell's El Paso, Texas, facility in December of 2011, though the parties dispute whether he was hired by Defendant "through" a staffing agency or assigned there by the agency itself. *Compare* Pl.'s Proposed Undisputed Facts, Pl.'s Mot. ¶ 3 ("Plaintiff's Facts"), ECF No. 38, *with* Def.'s Resp. to Pl.'s Proposed Undisputed Facts, Def.'s Resp. to Pl.'s Mot.

¶ 3 ("Defendant's Response to Plaintiff's Facts"), ECF No. 39-2. Because the events at issue here occurred after Plaintiff became a full Honeywell employee, this dispute is not relevant to this Order.

The Court notes that Plaintiff's Facts are set forth in the body of Plaintiff's Motion rather than as a separate attachment as required by the Court's Standing Order Regarding Motions for Summary Judgment ("Standing Order Regarding Summary Judgment"). *See* Pl.'s Mot. 1–10; Standing Order Regarding Summ. J. ¶ 1.

Proposed Undisputed Facts, Def.'s Resp. to Pl.'s Mot. ¶ 5 ("Defendant's Response to Plaintiff's Facts"), ECF No. 39-2. During Plaintiff's stint in Defendant's HPS department, Employee Mario Sanchez worked the same daily shifts alongside him. *See* Pl.'s Facts ¶ 6; Def.'s Resp. to Pl.'s Facts ¶ 6 (denying this fact to the extent that Plaintiff asserts that Sanchez began to harass him). Plaintiff presents evidence that, at the time of his December 2012 transfer, Sanchez began to make sexually tinged comments to Plaintiff on a "daily basis." *See* Pl.'s Facts ¶ 6. Plaintiff contends that these remarks included telling Plaintiff that he needed to "get laid" and asking repeatedly why Plaintiff was not married and did not have children. Pl.'s Facts ¶¶ 7–8.

In June 2014, Plaintiff requested to be transferred and was transferred to the Sensing and Control ("S and C") department in Honeywell's El Paso, Texas, facility. Pl.'s Facts ¶ 9; *see* Def.'s Resp. to Pl.'s Facts ¶ 9 (admitting Plaintiff was transferred to the "S and C" department). At some prior, unspecified time, Sanchez had also transferred to the S and C department; as of June 2014, he was once again working daily beside Plaintiff. *See* Pl.'s Facts ¶ 10; Def.'s Resp. to Pl.'s Facts ¶ 10 (not denying that Sanchez had already started work in Plaintiff's new department when Plaintiff transferred). Plaintiff presents evidence that, at this time, Sanchez continued his untoward behavior by making obscene gestures toward Plaintiff. Pl.'s Facts ¶ 11. Plaintiff further produces evidence that, on one occasion, another coworker, Danny Garibay, was bending over palletizing boxes when Sanchez pointed to the Garibay's buttocks and stated, "Danny [Garibay] has a big ass. Look." Pl.'s Facts ¶ 12.

On August 21, 2014, the parties agree that Sanchez, Plaintiff, and several other warehouse employees were offloading boxes from a conveyor belt onto nearby pallets. Def.'s Facts ¶ 8; Pl.'s Resp. to Def.'s Facts ¶ 8. About the events of the rest of the day, the parties nearly uniformly disagree. *Compare* Pl.'s Facts ¶ 17–28, *with* Def.'s Resp. to Pl.'s Facts ¶ 17–28. Plaintiff's rendition of the day is as follows: while Plaintiff and Sanchez were working together, Sanchez made numerous vulgar comments and suggestions to him. *See* Pl.'s Facts ¶ 17–21. Sanchez told him he "need[ed] to get laid. [He] need[ed] a girlfriend." Pl.'s Facts ¶ 17; Pl.'s Mot., Ex. A, Ricardo Guadalajara Dep. 106:9–10 ("Guadalajara Deposition"), ECF No. 38-1; *see id.* at 84:17–19. The comments continued: Sanchez suggested to Plaintiff then that he "should take a penis up [his] anus, [he] might like it." Pl.'s Facts ¶ 13; Guadalajara Dep. 84:21–22. After Plaintiff told Sanchez to leave him alone, Sanchez repeated this suggestion and added that Plaintiff should "[a]sk Danny [Garibay] because I bet you Danny likes it too." Guadalajara Dep. 85:6–7; *see* Pl.'s Facts ¶ 3. At some point on the same day, Sanchez told his coworkers that he had been out at Wal-Mart with another man and had told the cashier, "si somos putos y que?" which translates—roughly—to "yes, we're gay and what of it?" *Id.* at 81:13–82:1; Pl.'s Facts ¶ 21. Plaintiff informed Sanchez that he was heterosexual and that he did not care about Sanchez's personal life. Guadalajara Dep. 106:18–24; Pl.'s Facts ¶¶ 22–23. Save Plaintiff's description of his own sexual orientation, Defendant disputes the content and occurrence of these discussions in toto. *See* Def.'s Resp. to Pl.'s Facts ¶¶ 17–24.[3]

---

3. Defendant objects to the admission of all of Sanchez's statements to Plaintiff on the basis of hearsay. *See* Def.'s Resp. to Pl.'s Facts ¶¶ 6–

Sometime after these exchanges, Plaintiff produces evidence that he was bending over to pick up a box from a pallet when Sanchez stuck two fingers into Plaintiff's anus through his work shorts. Pl.'s Facts ¶ 24. Defendant disputes this, characterizing the incident as "brief physical contact." Def.'s Facts ¶ 10–12. Plaintiff avers that he told Sanchez to never do that again, at which point Sanchez laughed. Pl.'s Facts ¶¶ 25–26. Plaintiff then warned Sanchez that should Sanchez touch him again, he would "knock [Sanchez] out." Guadalajara Dep. 110:2–5; Pl.'s Fact ¶ 27; see Def.'s Resp. to Pl.'s Facts ¶ 27.

 After this incident, Sanchez suggested that the pair go speak to Warehouse Lead Worker Roberto Ramos, Jr. Pl.'s Facts ¶ 29; Def.'s Facts ¶ 18. Plaintiff informed Ramos that Sanchez intentionally touched him. Pl.'s Facts ¶ 30; Def.'s Facts ¶ 20. Ramos responded by letting Sanchez and Plaintiff know that he would review security video footage and reporting the altercation to Warehouse Manager Sam Yildrim. Pl.'s Facts ¶ 31; Def.'s Resp. to Pl.'s Facts ¶ 31 (not denying the responsive actions taken by Ramos). That day, Yildrim reported the incident to Honeywell's Senior Human Resources Manager, Leigh Ann Angelini. Def.'s Facts ¶ 24; see Pl.'s Resp. to Def.'s Facts ¶ 24 (agreeing that Yildrim reported the incident to Angelini that day). Yildrim, at Angelini's direction, directed Sanchez and Plaintiff to write statements about the incident; in his

statement, Sanchez maintained that the touching was accidental. Def.'s Facts ¶ 26–27; see Pl.'s Resp. to Def.'s Facts ¶ 27 (denying the truth of Sanchez's statement).[4] Plaintiff, conversely, wrote in his statement that Sanchez had cupped his buttocks with "their middle finger [sic] right in the center of my crack." Pl.'s Mot., Ex. G, at 23, Guadalajara Written Statement ("Guadalajara Statement"), ECF No. 38–2; see Pl.'s Facts ¶ 35; Def.'s Resp. to Pl.'s Facts ¶ 35 (objecting only to the characterization of this touching).

The following week, on August 27, 2014, Sanchez approached Warehouse Supervisor Alonso Martinez and informed him of the altercation—the first notice imparted to Martinez regarding the incident. Def.'s Facts ¶ 30; Pl.'s Resp. to Def.'s Facts ¶ 30. Defendant produces evidence that Sanchez again denied that he had touched Plaintiff inappropriately. Def.'s Facts ¶ 31.[5] Martinez reported this conversation to Yildrim and Angelini. Id. ¶ 32; Pl.'s Resp. to Def.'s Facts ¶ 32. Martinez then spoke to Plaintiff and informed him that Sanchez had reported Plaintiff for threatening him with physical violence, at which point Plaintiff asserted that he had a right to defend himself. Pl.'s Facts ¶ 40; see Def.'s Facts ¶ 40 (contesting the characterization of the alleged touching as sexual assault). At this interview, Plaintiff admitted to stating to Sanchez that he would defend himself should he touch him again. See Pl.'s Facts

---

8, 12–13, 15, 17–22, 24, 28. The Court addresses Defendant's objections below.

4. Plaintiff argues that Sanchez's written statement should be excluded as hearsay. Pl.'s Resp. to Def.'s Facts ¶ 27. Defendant does not introduce the written statement to prove the truth of the matter asserted, that Sanchez did not touch Plaintiff; rather, Defendant introduces the statement as evidence considered by Defendant during its investigation. See FED. R. EVID. 801(c)(2) (" 'Hearsay' means a statement that … a party offers in evidence to

prove the truth of the matter asserted in the statement."). Accordingly, the statement is admitted.

5. Plaintiff objects to Sanchez's statement to Martinez as hearsay. See Pl.'s Resp. to Def.'s Facts ¶ 31. To the extent that Sanchez's statement serves only as evidence of the reports Honeywell used in conducting its investigation, it is not hearsay and is admitted. See FED. R. EVID. 801(c)(2).

¶ 40; Def.'s Resp. to Pl.'s Facts ¶ 40. Martinez suspended Plaintiff with pay pending investigation for allegedly making a threat of violence against Sanchez. *See* Pl.'s Facts ¶ 41; Def.'s Facts ¶ 34.

On August 29, 2014, Angelini interviewed Sanchez in the presence of a representative from his staffing agency, Manpower Group ("Manpower"). Def.'s Facts ¶ 35; *see* Pl.'s Resp. to Def.'s Facts ¶ 35 (denying that Manpower was notified of a sexual assault). On September 9, 2014, Angelini interviewed Plaintiff via telephone. Pl.'s Facts ¶ 42; Def.'s Facts ¶ 37. Defendant terminated Plaintiff's employment on October, 9, 2014. Pl.'s Facts ¶ 43; *see* Def.'s Resp. to Pl.'s Facts ¶ 43 (acknowledging the date of Plaintiff's termination).

### B. Procedural History

On April 1, 2015, Plaintiff filed suit against Defendant Honeywell in the County Court at Law 3, El Paso County, Texas. *See* Pl.'s Original Pet. and Request for Disclosure, Notice of Removal, Ex. A, at 2–7 ("Original Petition"), ECF No. 1. In his Original Petition, Plaintiff brings claims against Defendant for sexual harassment and unlawful retaliation. *See* Pet. ¶ 23. The Petition does not specify whether Plaintiff's claims arise under the Texas Commission on Human Rights Act ("TCHRA"), Title VII of the Civil Rights Act ("Title VII"), or both. *See generally id.*

On May 11, 2015, Defendant removed the Case to this Court on the basis of diversity jurisdiction. *See* Notice of Removal 1–3. Following the conclusion of discovery, the parties filed cross motions for summary judgment: Defendant filed its Motion as to all claims and Plaintiff only as to his TCHRA claims for sexual harassment and retaliation. *See* Def.'s Mot; Pl.'s Mot. Defendant responded to Plaintiff's Motion on July 5, 2016, and Plaintiff responded to Defendant's Motion on July 11, 2016. *See* Def.'s Resp. to Pl.'s Mot. ("De-

fendant's Response"), ECF No. 39; Pl.'s Resp. to Def.'s Mot. ("Plaintiff's Response"), ECF No. 42. Defendant then replied to Plaintiff's Response on July 19, 2016, and Plaintiff replied to Defendant's Response the same day. *See* Def.'s. Reply in Supp. of Def.'s Mot. ("Defendant's Reply"), ECF No. 45; Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. ("Plaintiff's Reply"), ECF No. 46. Both Plaintiff's Motion and Defendant's Motion are fully briefed and ripe for resolution.

## II. DISCUSSION

### A. Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Tex. Tech.*

*Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials[ ]" or show "that the materials cited [by the movant] do not establish the absence ... of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### B. Defendant's Motion

As noted above, the parties in this case filed cross-motions for summary judgment. *See* Def.'s Mot.; Pl.'s Mot. The Court first examines Defendant's Motion. Conse-

quently, for the purposes of this section, the Court resolves all factual disputes and draws all inferences in Plaintiff's favor as non-movant. *See Little*, 37 F.3d at 1075; *Man Roland*, 438 F.3d at 478–79.

### 1. Plaintiff's Title VII sex discrimination claim

The Court first turns to Defendant's summary-judgment challenge to Plaintiff's claim of same-sex harassment under Title VII. Defendant argues that it is entitled to summary judgment on Plaintiff's same-sex harassment hostile work environment claim for three reasons: (1) because Plaintiff cannot demonstrate that the alleged harassment was based on sex; (2) because Plaintiff cannot demonstrate that the alleged harassment was severe and pervasive enough to produce a hostile work environment; and (3) because Honeywell took prompt remedial action to end the harassment, thus satisfying its duty to Plaintiff. Def.'s Mot. 8–15.

Plaintiff responds (1) that the alleged harassment was based on sex because there was credible evidence Sanchez was sexually interested in Plaintiff, including a history of lewd comments and, on one occasion, the insertion of two fingers into Plaintiff's anus over his work clothes; (2) that a history of harassing comments to Plaintiff at Honeywell constituted pervasive harassment or that the insertion of two fingers into Plaintiff's anus over his work clothes was sufficiently severe to constitute a hostile work environment; and (3) that Honeywell should have known of the harassing conduct and failed to stop it or that, having been notified, Honeywell improperly suspended and terminated Plaintiff instead of instituting prompt remedial measures. Pl.'s Resp. 2–14.[6]

---

**6.** The parties disagree as to whether Honeywell could discipline Sanchez. *See* Def.'s Facts ¶ 7; Pl.'s Resp. to Def.'s Facts ¶ 7. How-

ever, Title VII liability depends on the employment relationship between the complaining employee and the alleged employer—

■ Title VII proscribes employer action that "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Its "prohibition of discrimination 'because of ... sex' protects men as well as women." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (internal citations omitted). To establish a same-sex harassment claim, an employee must prove "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [sex]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (quoting *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 162–63 (5th Cir. 2007)). When the alleged harasser is a coworker, the plaintiff must also prove a fifth prong: that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action." *Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 213 (5th Cir. 2016) (internal citations and quotation marks omitted).

In the Fifth Circuit, courts "analyze these elements by way of a two-step inquiry." *Boh Bros.*, 731 F.3d at 453 (citing *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002)). First, courts decipher "whether the alleged harasser's conduct was actually sex discrimination, and second whether the conduct meets the standard for a *quid pro quo* or hostile work environment claim." *Love v. Motiva Enters. LLC*, 349 Fed.Appx. 900, 902 (5th Cir. 2009)

(internal citations omitted). The inquiry into the conduct in the first step is distinct from the inquiry into the conduct in the second. *See La Day*, 302 F.3d at 478.

As suggested above, Defendant appears to concede the first two elements of Plaintiff's prima facie case, that Plaintiff belongs to a protected class and that he was subject to uninvited sexual harassment; however, it disputes whether the harassment was because of sex, whether it affected "a term, condition, or privilege of employment," and whether it knew or should have known about the harassment and failed to take prompt remedial measures. *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 403 (5th Cir. 1993) (internal quotation marks omitted).

The Court begins its analysis by determining whether Honeywell has proven that no reasonable jury could conclude that the harassment was, in fact, sex discrimination. *See Oncale*, 523 U.S. at 78, 118 S.Ct. 998.

#### a. Discrimination "because of" sex

■ Defendant argues that Plaintiff presents no credible evidence that Sanchez is homosexual or that he made explicit or implicit proposals of sexual activity. Def.'s Mot. 9–10. Viewed together, Defendant continues, Sanchez's alleged comments and conduct support only the "intent of non-sexual horseplay" and "intent to taunt" Plaintiff rather than sexual desire. *Id.* at 11, 12. In response, Plaintiff points to Sanchez's alleged digital penetration of Plaintiff, as well as his alleged sexual comments, arguing that these show sexual interest in Plaintiff. Pl.'s Resp. 2–6.

Plaintiff and Honeywell. *See Skidmore v. Precision Print'g & Pack'g, Inc.*, 188 F.3d 606, 616–17 (5th Cir. 1999); *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir. 1983) (outlining the factors courts consider when deciding if an entity is liable to a complaining employee). Therefore, the dispute as to what entity could directly discipline Sanchez is not relevant to the Court's analysis.

■ According to the Fifth Circuit, the Supreme Court in *Oncale* provided three "evidentiary paths" for plaintiffs to make a showing in a same-sex harassment case that the harassment was "because of . . . sex":

> (1) a plaintiff may show that the harasser was homosexual and motivated by sexual desire; (2) a plaintiff may show that the harassment was framed "in such sex-specific and derogatory terms . . . as to make it clear that the harasser [was] motivated by general hostility to the presence" of a particular gender in the workplace; and (3) a plaintiff may "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Boh Bros.*, 731 F.3d at 455 (citing and quoting *Oncale*, 523 U.S. at 80–81, 118 S.Ct. 998).

These paths are "illustrative" only, and the plaintiff may embark on "[w]hatever evidentiary route [he] chooses to follow." *Id.* at 455–56 (quoting *Oncale*, 523 U.S. at 80–81, 118 S.Ct. 998). In the instant case, the parties attend mostly to the first "path," and thus the Court focuses on whether Plaintiff has shown evidence that Sanchez is homosexual and that his conduct was motivated by sexual desire. *See id.* at 455.

Two kinds of evidence provide "especially" credible proof that a harasser may be homosexual: (1) he "intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest;" or (2) he "made same-sex advances to others, especially to other employees." *La Day*, 302 F.3d at 480. There is scant evidence in the record that Sanchez made same-sex advances toward other male employees. *See* Pl.'s Resp. 5–6. However, the Court finds here that there is ample evidence that Sanchez "intended to have some kind of sexual contact with the plaintiff." *See La Day*, 302 F.3d at 480; *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012) (quoting *La Day*, 302 F.3d at 480)

According to Plaintiff, Sanchez sexually assaulted Plaintiff by inserting two fingers into Plaintiff's anus through his work shorts. *See* Pl.'s Resp. 4–5; App. to Def.'s Mot., Ex. A, Ricardo Guadalajara Dep. 107:8–12; 109:4–7; 111:13–19 ("Guadalajara Deposition"), ECF No. 36–1. Plaintiff's account is bolstered by that of Ramos, who testified that on the day of the incident, Plaintiff and Sanchez came to him to discuss their altercation, including Plaintiff's allegations of inappropriate touching. *See* App. to Def.'s Mot., Ex. C, Roberto Ramos, Jr. Dep. 8:12–11:4 ("Ramos Deposition"), ECF No. 36–1. Further, handwritten notes taken by Martinez, dated August 27, 2014, six days after the alleged incident, also make reference to "two fingers" touching Plaintiff's buttocks. App. to Def.'s Mot., Ex. G, at 97 ("Martinez Notes"), ECF No. 36–1. Further, Honeywell's Business Conduct Incident Report ("BCIR"), which records notes from an interview with Plaintiff approximately two-and-a-half weeks after the altercation, also noted that Plaintiff "felt Mario [Sanchez]'s hand try to touch him." App. to Def.'s Mot., Ex. H, Business Conduct Incident Report, at 121 ("BCIR"), ECF No. 36–1.[7]

■ Beyond the alleged touching itself, Plaintiff testifies that Sanchez made a number of suggestive comments to and gestures toward him. *See* Pl.'s Resp. 5–6; Guadalajara Dep. 81:7–83:8, 84:3–24, 85:6–

---

7. Plaintiff also submits the BCIR as an exhibit to its Response. *See* Pl.'s Resp., Ex. E, Business Conduct Incident Report ("BCIR"), ECF 38–2. For ease of reference, the Court refers to the page numbers assigned by Defendant to the BCIR.

7, 104:16–22, 106:1–13. As mentioned, on one occasion, Sanchez pointed to Garibay's buttocks and instructed Plaintiff to look at it. *See* Pl.'s Resp. 5–6; Guadalajara Dep. 104:18–22. On the day of the alleged touching, Plaintiff testified that Sanchez told him that he should "take a penis up [his] anus" because he "might like it," and it might "make [him] feel better." Pl.'s Resp. 6; Guadalajara Dep. 84:21–24; *see id.* at 106:7–17; *see also* BCIR 122 ("Then [Plaintiff] says that Mario starts to say "I bet you Danny [Garibay] likes it in the butt, you never know you might like it in the butt too[.]"). In addition to these comments, Plaintiff also testified that Sanchez told his coworkers that he was out at Wal-Mart with another man and had told the cashier, "si somos putos y que?" which translates—roughly—to "yes, we're gay and what of it?"[8] Guadalajara Dep. 81:13–18. It was apparently this exchange, coupled with sexual comments about Garibay that led Plaintiff to believe that Sanchez is a "promiscuous gay man." *Id.* at 81:7–9; *see id.* at 82:6–19.

Plaintiff is correct to draw parallels between the instant case and that considered by the Fifth Circuit in *La Day. See* Pl.'s Resp. 4–5 (citing *La Day*, 302 F.3d at 480). In *La Day*, the Fifth Circuit carefully considered three pieces of evidence relevant to raise a fact issue concerning whether the alleged harasser was homosexual. *See La Day*, 302 F.3d at 476. Specifically, the Fifth Circuit considered evidence (1) that the alleged harasser stated that he was jealous of the plaintiff's girlfriend; (2) that the alleged harasser "fondled" the plaintiff's anus and then laughed when plaintiff told him to desist; and (3) that the alleged harasser had angrily spat on plaintiff after plaintiff reported his behavior. *See id.* at 476, 479–81. The Fifth Circuit reasoned that the harasser's remark that he was jealous, "combined with his poking of [the plaintiff's] anus, easily is susceptible" of the interpretation that the harasser intended to make sexual contact with the plaintiff. *Id.* at 480. When considered in addition to the harasser's apparent anger over rejection, the Court found that this evidence was sufficient proof of the harasser's sexual orientation for the harassment claim to survive summary judgment. *See id.* at 480–81.

As did the plaintiff in *La Day*, Plaintiff here presents evidence of a mix of inappropriate touching and commentary on the part of Sanchez. *See* Guadalajara Dep. 84:21–85:12; 107:8–13; *La Day*, 302 F.3d at 476, 479–81. According to Plaintiff's evidence, (1) Sanchez pointed out the buttocks of another employee to Plaintiff; (2) Sanchez suggested to Plaintiff he would enjoy anal sex; and (3) Sanchez inserted two fingers into Plaintiff's anus over his work shorts before attempting to laugh off

---

**8.** Defendant argues that Plaintiff's "uncorroborated speculation and his reliance on hearsay" do not meet the standard for credible evidence of homosexuality. Def's Mot. 9. In its Motion, Defendant does not specify to which statements it refers, as it is required to do. *Cf. Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 722 (N.D. Tex. 2006) (denying a party's motion to strike when it was imprecise regarding which statements it believed to be hearsay). Federal Rule of Evidence 103(a)(1) requires an objecting party to be specific when making objections. Fed. R. Evid. 103(a). "[U]nobjected to hearsay may be considered by the trier of fact for such probative value as it may have." *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (quoting *Whitehead v. Food Max of Miss. Inc.*, 163 F.3d 265, 275 (5th Cir. 1998)). Accordingly, for the purposes of Defendant's Motion these objections are overruled and the statements are admitted.

Regarding Plaintiff's Motion, Defendant objects to all of the statements made by Sanchez to Plaintiff. *See* Def.'s Resp. to Pl.'s Facts, ¶¶ 6–8, 12–13, 15, 17–22, 24, 28. However, as explained below, the Court denies Plaintiff's Motion in its entirety. *See infra.* Therefore, the Court need not address these objections.

the incident. Guadalajara Dep. 84:21–24, 104:18–22, 107:8–13. The evidence of anal touching Plaintiff presents here closely resembles that presented by the plaintiff in *La Day*, even down to the alleged harasser's laughter at the complaining employee. *Compare* Guadalajara Dep. 107:8–22, *with La Day*, 302 F.3d at 476. Further, like the harassing employee in *La Day*, though Sanchez did not directly proposition Plaintiff, his suggestion that Plaintiff engage in sexual activity with a man "combined with his poking of [Plaintiff's] anus, easily is susceptible" of interpreting those actions as motivated by sexual desire. *See La Day*, 302 F.3d at 480. Therefore, following the Fifth Circuit's opinion in *La Day*, the Court finds that there is "credible evidence" in the case at bar that Sanchez was motivated by sexual desire for Plaintiff. *See id.* at 478 (citing *Oncale*, 523 U.S. at 80, 118 S.Ct. 998).

Certainly, there is some evidence to support Defendant's version of events: namely, that Sanchez is not gay but merely intended to "taunt" Plaintiff. *See* Def.'s Mot. 12; *La Day*, 302 F.3d at 480. For example, Plaintiff did state that he believed Sanchez intended to antagonize him. *See* Guadalajara Dep. 106:3–9. Though it is "certainly possible" that Sanchez was "simply trying to humiliate" Plaintiff for reasons unrelated to sexual desire, in viewing all the summary judgment evidence in the light most favorable to Plaintiff, as nonmovant, the Court finds that there is evidence that Sanchez is a homosexual man who intended to make advances toward Plaintiff. *La Day*, 302 F.3d at 480; *see id.*; *see also Pinedo v. Alliance Inspection Mgmt., LLC*, No. EP-14-CV-195-KC, 2015 WL 3747426, at *11 (W.D. Tex. June 14, 2015) (noting that this Court "cannot weigh evidence in the context of a summary judgment motion").

Furthermore, as the Court noted in *Pinedo*, "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Pinedo*, 2015 WL 3747426, at *11 (quoting *Oncale*, 523 U.S. at 80, 118 S.Ct. 998); *see also Boh Bros.*, 731 F.3d at 454 ("[A] plaintiff may establish a sexual harassment claim with evidence of sex-stereotyping."). Here, Sanchez also apparently made comments calling Plaintiff's sexuality into question because he is not married and does not have children. *See* Guadalajara Dep. 73:19–24. Though neither Plaintiff nor Defendant pursue this line of inquiry, a jury could find from this commentary, combined with the alleged offensive touching, that Sanchez was harassing Plaintiff because he did not conform to gender stereotypes. *See Boh Bros.*, 731 F.3d at 454.

### b. Severe or pervasive harassment

The Court now turns to the second step of the inquiry laid out in *La Day*: whether some evidence exists that the harassment was so severe or pervasive as to overcome Defendant's Motion for Summary Judgment. 302 F.3d at 478. Defendant argues that the comments Sanchez made to Plaintiff on August 21, 2014, and the subsequent alleged touching do not rise to the level of "severe and pervasive" required to substantiate a hostile work environment claim. Def.'s Mot. 13 (citing *Hockman v. Westward Commc'ns LLC*, 407 F.3d 317, 328 (5th Cir. 2004)). Plaintiff argues in response that, because he proffers evidence of sexual assault at the hands of Sanchez, even that single incident of touching "sufficiently alter[ed] the conditions of [Plaintiff's] employment and clearly creat[ed] an abusive work environment for the purposes of Title VII liability." Resp. 8 (citing *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 436 (5th Cir. 2005) (quoting

*Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995))).

■ To affect a "term, condition, or privilege" of employment, harassment must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 479 (Tex. 2008). The environment must be both "objectively and subjectively offensive"; the Supreme Court has directed courts to "look[ ] at all the circumstances" to determine whether it is sufficiently abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In doing so, courts consider factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "Title VII does not reach 'conduct that is merely offensive'—it proscribes only 'an environment that a reasonable person would find hostile or abusive.'" *Matherne v. Ruba Mgmt.*, 624 Fed. Appx. 835, 839 (5th Cir. 2015) (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. 367). However, "isolated incidents, if egregious, can alter the terms and conditions of employment." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 403 (5th Cir. 2013) (quoting *Harvill*, 433 F.3d at 436). For example, "deliberate and unwanted touching of . . . intimate body parts" can constitute severe sexual harassment." *See Harvill*, 433 F.3d at 436.

Indeed, the Fifth Circuit has approvingly cited a Seventh Circuit decision, *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001), for the proposition that touching of an intimate body part is "one of the most severe" kinds of sexual harassment. *Har-*

*vill*, 433 F.3d at 435–36 (citing *Worth*, 276 F.3d at 268). In *Worth*, an employee alleged that her employer had stroked her face and buttocks, and had put his hand down her shirt, touching her breast for several seconds. *Worth*, 276 F.3d at 256–57. The Seventh Circuit emphasized the contact with her breast in finding that the evidence was sufficient for the jury to have found that the employee had experienced a hostile work environment: "[I]mportantly, in the present case, of the several touching incidents, one involved [the employer] touching an intimate body part." *Id.* at 268.

■ The Court begins its analysis by noting that Defendant incorrectly characterizes the level of harassment that the Plaintiff needs to show as a matter of law. *See* Def.'s Mot. 12–13. Defendant, after accurately stating the standard, contends that Plaintiff cannot meet the "severe and pervasive" standard necessary. *Compare id.* at 12, *with id.* at 13. However, Plaintiff need only show that the harassment was severe *or* pervasive, not both. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477 (5th Cir. 1989) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) ("A hostile work environment claim arises when a plaintiff alleges harassment 'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.' "). This is not an "irrelevant distinction"—requiring harassing conduct to be "both severe *and* pervasive in order to be actionable imposes a more stringent burden on the plaintiff than required by law." *Harvill*, 433 F.3d at 435; *see* Def.'s Mot. 12–13. Defendant's error in articulating the legal standard likely stems from its citations to *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326, 328 (5th Cir. 2004). *See* Def.'s Mot. 13. As highlighted in *Harvill* and *Royal*, *Hockman* was incorrect to the

extent it required both "severe and pervasive" harassment; that requirement represents the "wrong legal standard" and contradicts earlier, controlling Fifth Circuit precedent as well as the Supreme Court of the United States. *Harvill*, 433 F.3d at 434–35 (citing *Waltman*, 875 F.2d at 477; *Meritor*, 477 U.S. at 76, 106 S.Ct. 2399); *see Royal*, 736 F.3d at 403.[9]

The Court finds that Plaintiff's evidence of digital anal penetration over clothes is sufficiently severe as to raise an issue of fact overcoming summary judgment on this point.[10] *See* Pl.'s Resp. 8. Drawing all inferences in favor of Plaintiff as the nonmovant, as the Court must, Plaintiff's testimony recalling the contact, combined with the suggestive comments reported by Plaintiff on the day of the incident, suggests that the contact was intentional and not, as Defendant contends, accidental. *See* Def.'s Mot. 5–6; *Little*, 37 F.3d at 1075; *Man Roland*, 438 F.3d at 478–79. Indeed, the video evidence submitted by Defendant is inconclusive as to whether Sanchez inserted his fingers into Plaintiff's anus: the video quality is poor and the camera angles do not provide a clear view of Sanchez's hand at the time in question. *See* App. to Def.'s Mot., Ex. H, Video Footage ("Video Evidence"), ECF No. 36–1. In other words, it is not the case here that the video evidence "clearly contradicts the version of the story" told by Plaintiff, and it is for a jury to ascertain whether Plaintiff's allegations are credible. *Cf. Scott v. Harris*, 550 U.S. 372, 378–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (finding that the lower court should not have credited Plain-

tiff's version of events when video evidence exposed it as a "visible fiction"). Rather, Plaintiff presents evidence of digital penetration of his anus, certainly an intimate body part. Therefore, as the alleged touching is among the "most severe" types of harassment, Defendant cannot successfully overcome Plaintiff's claim with summary-judgment evidence showing lack of severity or pervasiveness. *Harvill*, 433 F.3d at 435–36 (citing *Worth*, 276 F.3d at 268).

### c. Knowledge and prompt remedial action

While there are genuine issues of material fact with regard to whether Plaintiff experienced actionable discrimination and whether the harassment was severe or pervasive, the Court must still determine whether Plaintiff has made a showing that Defendant knew of the harassment and failed to take prompt remedial action. *See Harvill*, 433 F.3d at 434. If he has not, Defendant cannot be held liable as a matter of law. *See id.*

Defendant contends that because Honeywell took swift remedial action "reasonably calculated to end the harassment" as soon as it learned of Plaintiff's allegations, Plaintiff's claim fails as a matter of law. *See* Def.'s Mot. 14–15; *Kreamer v. Henry's Towing*, 150 Fed.Appx. 378, 382 (5th Cir. 2005) (internal citations omitted). Specifically, Defendant argues that it immediately separated the employees and conducted a thorough investigation. Def's Mot. 14. Plaintiff argues that Defendant had actual knowledge of the hostile work environment and that its response—failing

---

9. In laying out the legal standard for severe or pervasive harassment, Defendant also cites to *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). *See* Def.'s Mot. 12. The Court in *Royal* also singled out *Shepherd* for using the wrong legal standard by requiring both severe and pervasive harassment in that case. *See* 736 F.3d at 403.

10. Plaintiff argues that the harassment was also pervasive, citing to multiple inappropriate comments allegedly made by another employee in 2012. *See* Pl.'s Resp. 10–11. As the Court need only find that the behavior was severe *or* pervasive for Plaintiff to avoid summary judgment, it does not consider this evidence. *See Royal*, 736 F.3d at 402–03.

to notify Sanchez's employer of the harassment and suspending, then terminating, Plaintiff—was neither prompt nor remedial. *See* Pl.'s Resp. 12–14.

 Courts evaluate Title VII sexual harassment claims differently based on whether the offending employee is classified as supervisor or simply a coworker. *See Vance v. Ball State Univ.,* —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013); *Matherne,* 624 Fed.Appx. at 839. The Supreme Court recently defined a supervisor as a person who is "empowered by the employer to take tangible employment actions against the victim." *Vance,* 133 S.Ct. at 2439. If the alleged harasser is the plaintiff's supervisor, then the employer is strictly liable under Title VII when the harassment concludes in a tangible employment action against the accuser. *Vance,* 133 S.Ct. at 2439, 2442. However, a plaintiff bringing a sexual harassment claim against a co-worker must provide some evidence (1) that the employer knew or should have known of the harassment; and (2) that, equipped with that knowledge, the employer failed to enact prompt remedial measures. *See Aryain,* 534 F.3d at 479 n.4 ("Our case law distinguishes between the *prima facie* case required for a harassment claim against a co-worker as opposed to a claim against a supervisor."); *Harvill,* 433 F.3d at 434 (listing the elements of a co-worker harassment claim).

Here, the parties do not dispute that Sanchez was a coworker rather than a supervisor. *See* Def.'s Mot. 8; Pl.'s Resp. 9–10. The parties also do not dispute that Defendant had actual knowledge of the allegations of harassment. *See* Def.'s Mot.

14–15; Pl.'s Resp. 12–14.[11] Thus, Plaintiff must show, as an element of his prima facie case, that Defendant failed to take prompt remedial measures. *See Harvill,* 433 F.3d at 434.

 An employer is not liable under Title VII if the alleged harasser is a co-worker unless "it failed to take prompt remedial action." *Nash,* 9 F.3d at 404. "[N]ot every response by an employer will be sufficient to discharge its legal duty." *Waltman,* 875 F.2d at 479. What constitutes prompt remedial measures is a "fact-specific inquiry," and an employer may still be liable for co-worker harassment if the plaintiff establishes that the response of the employer was not "reasonably calculated to halt the harassment." *Williams–Boldware v. Denton Cnty.,* 741 F.3d 635, 640 (5th Cir. 2014) (internal citations and quotation marks omitted). Some indicators, albeit not the only ones, that an employer has taken sufficient remedial measures include the employer taking the allegations of harassment seriously, conducting "prompt and thorough investigations," and immediately implementing "remedial and disciplinary measures" as the result of the investigation. *See id.* (citing *Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794–95 (5th Cir. 1994) (per curiam)). Indeed, "[d]espite the actual existence of sexual harassment, an investigation may shield an employer from Title VII liability even where investigation turned up no evidence of harassment if made in good faith." *Goff v. Soundolier Div. of Am. Trading & Prod. Corp.,* No. Civ.A.3:98-CV-2254-P, 2000 WL 707810, at *4 n.2 (N.D. Tex. May 30, 2000)

11. Defendant does dispute Plaintiff's argument that it had constructive knowledge of a hostile work environment, but, because Plaintiff need only show either actual *or* constructive knowledge, the Court need not address Plaintiff's evidence of constructive knowledge. *See* Def.'s Reply to Pl.'s Resp. 5 n.3 (disputing

Plaintiff's evidence of constructive knowledge); Pl.'s Resp. 9–12 (elaborating on Plaintiff's claim that Defendant had constructive knowledge of the harassment). Accordingly, the Court does not consider the Plaintiff's evidence in support of constructive knowledge.

(citing *Harris v. L & L Wings, Inc.*, 132 F.3d 978 (4th Cir. 1997)). Further, employers are not required to mete out "draconian penalties" upon the alleged harasser in order to comply with the Court's standard. *See id.* The Fifth Circuit has occasionally found that an employer took prompt remedial measures "as a matter of law." *Id.* (internal quotation marks and citations omitted).

Whether Defendant took prompt remedial measures is a close question. Honeywell investigated Plaintiff's claim, which included watching the videotape footage, interviewing Sanchez and Plaintiff, and speaking with possible witnesses. *See* Def.'s Mot. 14; Pl.'s Resp. to Def.'s Facts ¶ 24 (acknowledging the existence of an investigation); BCIR 120–23 (summarizing Defendant's interpretation of the video footage, the interviews with Plaintiff and Sanchez, and reports from other employees identifiable in the video footage). Plaintiff presents evidence, however, that undermines the legitimacy of the investigation and raises an issue of fact as to whether Defendant took Plaintiff's claim seriously, taking prompt remedial action. *See Williams–Boldware*, 741 F.3d at 640 (citing *Carmon*, 17 F.3d at 795); *see also Goff*, 2000 WL 707810, at *4 n.2 (noting that a "good faith" investigation shields an employer from Title VII liability).

Defendant contends that, because Plaintiff's threat against Sanchez was of such a "serious nature, [Plaintiff] was *immediately* placed on paid suspension pending Honeywell's investigation of the altercation." Def.'s Mot. 5 (emphasis added). This is not so. In fact, as recorded by Defendant's own BCIR, the men continued to work side by side until August 27, 2014, six days after the Incident. *See* BCIR 121–22. Though six days can constitute the requisite promptness for prompt remedial measures in some cases, the Court emphasizes that the calculus for determining whether an employer's response is sufficient "will necessarily depend on the particular facts of the case." *Williams–Boldware*, 741 F.3d at 641 (quoting *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399–400 (5th Cir. 1996)); *cf. Nash*, 9 F.3d at 404 (finding that completing an investigation of an incident within a week and transferring the complaining employee with no loss of pay or benefits constituted prompt remedial measures). Here, a reasonable jury could conclude that the grave concern expressed by Defendant about workplace safety does not square with its decision to allow Plaintiff and Sanchez to work together for nearly a week after the Incident—especially given that the Warehouse Lead, Warehouse Manager, and Senior HR Manager were made aware of the allegations the very day the Incident occurred. *See* Ramos Dep. 8:12–11:14 (recounting Ramos's initial contact with Plaintiff and Sanchez on August 21, 2014).

Also, Defendant framed its investigation primarily as an inquiry into Plaintiff's threat against Sanchez and not into Plaintiff's harassment allegations—further supporting an inference that Defendant did not consider Plaintiff's claims with the gravitas they warranted. *See* BCIR 120; *see also Williams–Boldware*, 741 F.3d at 640 (citing *Carmon*, 17 F.3d at 795). For example, the BCIR completed by Defendant during the investigation contains a section in which the investigating employee or employees indicate, with an "X," the allegations at issue. BCIR 120. Among other potential topics, Defendant had the option to indicate that the incident report pertains to substance abuse, discrimination, harassment, theft, or workplace violence. *See id.* In this section, Defendant indicated only that "Workplace Violence"—and not harassment—was the subject of the investigation. *Id.*

Additionally, in its "BRIEF SUMMARY OF [THE] ISSUE" in the BCIR, Defendant omits any reference to Plaintiff's allegations, stating simply: "On 8/21/14, a warehouse employee, Ricardo Guadalajara e569356 at the TX55 location made threats of violence towards a Manpower employee, Mario Sanchez[,] while unloading packages from a delivery truck. At this time Ricardo has been suspended with pay while the investigation takes place." *Id.* Further, the Manpower representative present when Defendant interviewed Sanchez, Bertha Diaz, testified that she understood Sanchez was being investigated only for "bumping into" Plaintiff—not because Plaintiff had made allegations of sexual assault. Pl.'s Resp. 13–14; App. to Pl.'s Mot., Ex. K, Bertha Diaz Dep. 6:3–14 ("Diaz Deposition"), ECF No. 38–2; *see id.* 5:23–7:7. It is true that the BCIR addresses Plaintiff's allegations: Defendant reports that the allegations of lewd comments and inappropriate touching are "unsubstantiated." BCIR 120–21. But, Defendant relies heavily on the video recording to dismiss Plaintiff's allegations while simultaneously acknowledging that "[t]he footage does not have any sound and is not the best quality." *Id.* at 121. Thus, because of these inconsistencies, the Court cannot find, as a matter of law, that the investigation here constituted prompt remedial action. *Cf. Wyly v. W.F.K.R., Inc.*, 1 F.Supp.3d 510, 514 (W.D. Tex. 2014) ("[Employer]'s decision to terminate the allegedly harassing employee within days of learning of his harassment is sufficient to avoid Title VII liability.").

Taken together, Defendant's failure to separate the employees for nearly a week despite its allegedly serious concern about workplace safety, its framing of its investigation as primarily focused on workplace violence, and its reliance on an admittedly shoddy video recording create a fact issue as to whether Defendant's investigation and suspension of Plaintiff qualified as "prompt and remedial." *See Harvill*, 433 F.3d at 434. Moreover, when Plaintiff and Sanchez were eventually separated, it was due only to Plaintiff's suspension—followed by his termination. Def.'s Mot. 7. This is only remedial inasmuch as the harassment, necessarily, halted when Plaintiff was placed on leave. *See id.*; *Waltman*, 875 F.2d at 479 (requiring that an employer's response be "reasonably calculated" to halt harassment); *see also Goff*, 2000 WL 707810, at *5 ("While [immediately terminating a complaining employee] is sure to satisfy the prompt and effective requirements, it is not an appropriate remedial response within the meaning of cases such as *Hirras v. National RR Passenger, Corp.*, 95 F.3d 396, 399–200 (5th Cir. 1996)."). As Plaintiff presents evidence here from which a jury could draw a reasonable inference casting doubt on the legitimacy of the investigation, the Court cannot find that Defendant took prompt and remedial action as a matter of law. *See Harvill*, 433 F.3d at 434.

### d. Summary judgment denied as to Plaintiff's harassment claim

Plaintiff has adduced evidence sufficient to raise an issue of material fact as to each disputed element of his sexual harassment claim. *See Nash*, 9 F.3d at 403. Evidence that Sanchez inserted his fingers into Plaintiff's anus, when combined with his sexual remarks to Plaintiff, raises a fact issue as to whether the harassment occurred "because" of sex. *La Day*, 302 F.3d at 480; *see* Guadalajara Dep. 84:21–24, 104:18–22, 107:8–13. Because Plaintiff's anus is an intimate body part, Plaintiff presents a material fact issue as to whether the harassment complained of was severe or pervasive. *See* Pl.'s Resp. 7–9; Guadalajara Dep. 107:1–12, 109:4–7, 111:13–112:1; *Harvill*, 433 F.3d at 436. Finally, because Plaintiff adduces evidence

that Defendant's investigation was not undertaken in good faith, such that it did not qualify as remedial, an issue of material fact remains to be resolved on the fifth and final prong of Plaintiff's sexual harassment claim. *See Goff*, 2000 WL 707810, at *4 n.2; *see generally* BCIR (framing the investigation from the perspective of an investigation into a threat of violence). Accordingly, because Defendant has conceded the first two prongs of Plaintiff's harassment claim and because genuine issues of material fact remain concerning the final three, the Court denies Defendant's motion for summary judgment as it pertains to Plaintiff's Title VII sexual harassment claim.

## 2. Plaintiff's Title VII retaliation claim

The Court next considers Defendant's challenge to Plaintiff's retaliation claim. Defendant argues that because Plaintiff cannot establish the causation element of his prima facie case, or, alternatively, because Plaintiff cannot rebut Defendant's articulated non-discriminatory reason for discharge, Plaintiff's retaliation claims fails. Def.'s Mot. 15–19. Plaintiff argues, in response, that the temporal proximity between his complaint and his suspension and termination establishes his prima facie case and that Honeywell's articulated reason was per se retaliatory, illegitimate, and pretextual. *See* Pl.'s Resp. 19–24.

 Title VII's anti-retaliation provision prohibits employers from retaliating against employees that assert the rights available to them under Title VII. *Wheat v. Fla. Par. Juv. Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (citing 42 U.S.C. § 2000e–3(a)). In the absence of "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic," a plaintiff may prove a retaliation claim by using the burden-shifting formula set forth in *McDonnell Douglas*. *Fairchild v. All Am. Check Cashing, Inc.*,

815 F.3d 959, 966 (5th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) (internal quotation marks omitted). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Willis v. Cleco Corp.*, 749 F.3d 314, 317–18 (5th Cir. 2014). This requires a plaintiff to show that he or she (1) "engaged in protected activity;" that (2) the employer took a "materially adverse action" against him or her; and that (3) a "causal link" exists between the protected activity and the adverse action. *Wheat*, 811 F.3d at 705 (internal citations omitted). If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to provide a "legitimate, non-retaliatory reason for its decision." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 490 (5th Cir. 2014) (internal citations omitted). At that stage, the burden "shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.*

### a. Causal link between report of harassment and suspension and termination

Here, the parties dispute whether Plaintiff established the third element of his prima facie case—the causal link between his complaint and the adverse action—and, if he did so, whether he could demonstrate that Defendant's explanation of his termination was, in fact, pretextual. *See* Def.'s Mot. 15–19; Pl.'s Resp. 14–26.

 Since the Supreme Court of the United States issued its opinion in *Univ. of Tex. Sw. Med. Sch. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), a circuit split has developed regarding the standard of causation a Plaintiff needs to establish at the first and third stages of the *McDonnell Douglas* formula. *Compare Foster v. Univ. of Md.–E. Shore*,

787 F.3d 243, 251 (4th Cir. 2015) (holding that the heightened showing of but-for causation is not necessary for plaintiffs to prove a prima facie case), *with Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (evaluating the causal connection element in a plaintiff's prima facie case by the but-for standard). The Fifth Circuit has not yet definitively taken a position on the issue. *See Smith v. Bd. of Supervisors of S. Univ.*, 656 Fed.Appx. 30, 33 n.4 (5th Cir. 2016) (outlining the nature of the disagreement between the circuits and declining to decide the issue). *Nassar* clarified that Title VII retaliation claims, unlike discrimination claims, "must be proved according to traditional principles of but-for causation." *Nassar*, 133 S.Ct. at 2533. In other words, a plaintiff must adduce "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* It is not clear, however, whether this but-for causation requirement applies at the first stage of the *McDonnell Douglas* framework, when a plaintiff must establish its prima facie case, or rather only at the third stage of the framework, as a component of proving a defendant's proffered explanation is pretext. *Compare Foster*, 787 F.3d at 251, *with Ward*, 772 F.3d at 1203.

The Court need not resolve this issue because Plaintiff has shown but-for causation both in establishing his prima facie case and at the step showing pretext of the *McDonnell Douglas* formula. *See Smith*, 656 Fed.Appx. at 33 n.4 (declining to resolve the causation question and proceeding on the assumption that plaintiff showed a prima facie case); *cf. Medlock v. Ace Cash Exp., Inc.*, 589 Fed.Appx. 707, 710 (5th Cir. 2014) (assuming without deciding that plaintiff established its prima facie case before finding that plaintiff's claim failed when she could not show the reason for her termination was pretextual).

■ Defendant argues that Plaintiff cannot establish his prima facie claim of retaliation for several reasons. *See* Def.'s Mot. 16. First, it contends, Plaintiff "admitted" to violating the Violence Prevention Policy. *See id.* Second, it argues, because Plaintiff cannot identify other employees who Defendant treated differently than Plaintiff was treated. *See id.* Finally, Defendant argues that Plaintiff attributed his termination to "reasons unrelated to his harassment complaint, including his antisocial personality and his belief that he was not well-liked by his coworkers." *See id.*

Plaintiff responds by outlining his prima facie case, with supporting references to summary-judgment evidence, and by propounding several arguments to show that Defendant's articulated reason for his termination was illegitimate. *See* Pl.'s Resp. 14–24. Plaintiff argues that the close temporal proximity of six days between Plaintiff's report of harassment and his suspension and eventual termination produces a "causal link" between the protected activity of reporting harassment and the retaliatory adverse employment action. *Id.* at 15 (quoting *Ackel v. Nat'l Commc'n's, Inc.*, 339 F.3d 376, 386 (5th Cir. 2003)).

■ For the purposes of a Title VII retaliation claim, plaintiffs must make a prima facie case including evidence that a "causal link" exists between the protected activity and the adverse employment action. *Wheat*, 811 F.3d at 705 (citing *Davis*, 765 F.3d at 489–90). "To satisfy this 'causal link' requirement, [a plaintiff] must provide substantial evidence that 'but for' [his or her protected activity, he or she] would not have been terminated." *Paul v. Elayn Hunt Corr. Ctr.*, 666 Fed.Appx. 342, 348 (5th Cir. 2016) (per curiam) (internal citations omitted). "Close timing between an employee's protected activity and an ad-

verse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 870 (5th Cir. 2016) (per curiam) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis and internal quotation marks omitted)). However, the cases accepting "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal citations and quotation marks omitted); *see Paul*, 666 Fed.Appx. at 347–49 (holding that time lapse of 30 months "too great to show a causal link"); *Heggemeier*, 826 F.3d at 869–70 (finding that 21 months is "too substantial a gap to support an inference of causation"); *Glorioso v. Miss. Dep't of Corr.*, 193 F.3d 517, 1999 WL 706173, at *4–6 (5th Cir. 1999) (finding that an adverse employment action within a week of an employee's complaint established the necessary causal link for a prima facie case of retaliation). The Fifth Circuit has held that evidence of a lapse of five days is sufficient to allow an inference of a causal link. *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001).

Here, Plaintiff shows that the suspension that ultimately led to his termination commenced six days after he first reported the alleged sexual harassment to his supervisors. *See* BCIR 121–23. After being placed on paid suspension, Plaintiff never returned to work. *See id.*; *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331–32 (5th Cir. 2009) (context determines whether placing an employee on paid leave constitutes an adverse employment action). Here, Plaintiff produces evidence that supports an inference that Plaintiff's fate was determined by the time he was suspended, within a week of his report of alleged harassment on August 27, 2014. *See* BCIR 122. One month and a little more than two weeks later, on October 9, 2014, Plaintiff was terminated, never having been reinstated. *See id.* at 122. Both brief intervals here are sufficient to show "very close" temporal proximity. *See Breeden*, 532 U.S. at 273, 121 S.Ct. 1508; *Evans*, 246 F.3d at 354.

In addition to the close timing between Plaintiff's complaint and his suspension and termination, Plaintiff submits evidence calling into question the legitimacy of Honeywell's investigation. *See generally* BCIR. First, as detailed above, Honeywell framed its investigation as primarily concerned with a threat of violence despite the fact that investigation's impetus was the alleged harassment. *See id.* at 121. Second, Honeywell did not recommend that Manpower take any disciplinary or investigative action with regard to Sanchez after Plaintiff was suspended. *See id.* at 123. The Court finds that the extremely close temporal proximity here between Plaintiff's report and his suspension and termination, in combination with his evidence calling into question the legitimacy of the investigation, raises a factual question as to whether but for Plaintiff's complaint, he would not have been suspended and terminated. *See Evans*, 246 F.3d at 354; *Glorioso*, 1999 WL 706173, at *4–6; *see also Caldera v. Cty. of El Paso, Tex.*, 520 F.Supp.2d 846, 857 (W.D. Tex. 2007) (temporal proximity between protected activity and retaliatory discharge found in space of one day). So finding, the Court proceeds to the second and third stages of the *McDonnell Douglas* formula.

**b. Legitimate, non-retaliatory reason for suspension and termination**

Defendant contends that it has provided a legitimate, non-discriminatory, and non-

retaliatory reason for suspending and then terminating Plaintiff. *See* Def.'s Mot. 17. Specifically, it argues, Plaintiff violated Honeywell's Violence Prevention Policy and Code of Conduct [12] when he told Sanchez that he would "knock [him] out" if he was touched again. *Id.* at 2, 17. Even had Plaintiff been harassed, it reasons, anti-retaliation clauses do not permit violence and threats of violence in order to protest harassment. *Id.* at 17–18. Defendant argues that Plaintiff was not treated differently from similarly situated employees, noting that prior to Plaintiff's threat of violence, two El Paso Honeywell employees had been fired for "engag[ing] in an altercation." *Id.* at 19.

In response, Plaintiff argues that Defendant has not proffered a legitimate reason for his discharge because he did not in fact threaten Sanchez and merely responded to sexual assault with the conditional statement that *if* Sanchez touched Plaintiff again, he would defend himself. Pl.'s Resp. 21, 23–24. Because no threat actually occurred, Plaintiff reasons, the Defendant did not meet its burden to produce a legitimate, non-discriminatory or non-retaliatory reason for Plaintiff's termination, and the Court "must enter judgment for the plaintiff because no issue of fact remains in the case." *See id.* at 20–21.

 An employer produces a legitimate, non-retaliatory reason for the purposes of the second stage of the *McDonnell Douglas* when it articulates that an employee was terminated for violation of a company policy. *See Crisp v. Sears Roebuck & Co.*, 628 Fed.Appx. 220, 224 (5th Cir. 2015); *Irons v. Aircraft Serv. Int'l, Inc.*, 392 Fed.Appx. 305, 308–09, 312–13 (5th Cir. 2010); *see also Sellers v. BNSF Ry. Co.*, No. 1:11-CV-190, 2013 WL 1181458, at *13–14 (E.D. Tex. Mar. 18, 2013) (finding that evidence of violations of company policy provided a legitimate, non-retaliatory reason for the discharge of an employee who alleged her termination was in retaliation for bringing a sexual harassment suit). Then, "if the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case simply drops out of the picture." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (internal citations and quotation marks omitted). A defendant must "articulate—but not prove—a legitimate nondiscriminatory reason for its employment decision." *See Sellers*, 2013 WL 1181458, at *9.

Here, Defendant articulates a legitimate, non-retaliatory reason for Plaintiff's termination when it points to the alleged violation of its Violence Prevention Policy. *See* BCIR 120, 123; *Crisp*, 628 Fed.Appx. at 224; *Sellers*, 2013 1181458, at *9. Defendant having met its burden of production at the second stage of the *McDonnell Douglas* framework, the Court addresses the third stage—whether Plaintiff has produced evidence of pretextuality. *See Davis*, 765 F.3d at 490.

### c. Evidence of pretext

Plaintiff contends that, if Defendant has successfully rebutted its prima facie case, Plaintiff can still show that Defendant's

---

12. The applicable part of the Violence Prevention Policy reads:

> The Company will not tolerate, and is committed to strive to prevent, any threats or acts of violence, sabotage, intimidation, harassment or stalking directed against (i) individuals on its premises, (ii) individuals engaged in the Company's business or business-related events, and (iii) The Company's property. This prohibition includes any threat of violence, regardless of the individual's actual intent to commit harm.

Def.'s Mot., Ex. H, Company–Wide Violence Prevention Policy, at 106, 4.1.1 ("Violence Prevention Policy"), ECF No. 36–1.

given reason was pretextual. *See* Pl.'s Resp. 23. In his response to Defendant's proposed facts, he notes that the purported investigation did not focus on his complaints of sexual harassment but rather on the "false[ ]" claim that he had made a threat. Pl.'s Resp. to Def.'s Facts ¶ 52. Additionally, that the employees referenced by Defendant were fired for violations of the Violence Prevention Policy is irrelevant, Plaintiff argues, because in that "dissimilar" situation, a physical fight broke out involving pushing, shoving, and grabbing. *See* Pl.'s Resp. 24 (citing Angelini Dep. 33:1–6, 46:10–22; Martinez Dep. 19:16–21).

■■■ To rebut an employer's offered justification for an adverse employment action, an employee must raise a fact issue showing that but for his or her engagement in a protected activity, such as reporting sexual assault, the adverse employment action would not have been taken. *See Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 Fed.Appx. 328, 333 (5th Cir. 2014). Plaintiffs may establish pretext through (1) "evidence of disparate treatment" or (2) "by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal citations and quotation marks omitted). However, proof that an employer's decision was pretextual cannot withstand summary judgment when the record discloses a permissible reason for the adverse employment action or if a plaintiff creates "only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)).

■■■ An investigation into an alleged workplace policy violation, even if "imper-fect, incomplete, or arrived at a possibly incorrect conclusion," does not, by itself, show pretext—even if the investigation culminates in termination of the complaining employee. *Lawson v. Parker Hannifin Corp.*, 614 Fed.Appx. 725, 731 (5th Cir. 2015) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004)). In *Lawson*, an employee was terminated several months after complaining of sexual harassment. *Id.* at 727–28. Her employer contended that she was fired due to timecard fraud, which it investigated after she allegedly misrepresented her hours in the office. *Id.* Though the employee advanced evidence that the investigation into her attendance was not sufficiently thorough and thus the reason given was pretextual, the Fifth Circuit upheld summary judgment, reasoning that the plaintiff needed to show that the employer's reason for her termination was "unworthy of credence," not just that the investigation was "imperfect." *Id.* at 730 (internal quotation marks and citations omitted).

Here, Plaintiff has produced evidence sufficient to create a fact issue as to pretext. Plaintiff's arguments that Defendant's reason for his termination—violation of the Violence Prevention Policy—was pretextual or illegitimate rest on the premise that Defendant's investigation was unworthy of credence. *See* Pl.'s Resp. 20–24. Plaintiff shows that, although the impetus of the confrontation between Plaintiff and Sanchez was Sanchez's digital penetration of Plaintiff's anus, the investigation into the incident was framed as one into a threat of workplace violence. BCIR at 120. Further, there is evidence that Defendant's approach to this threat was suspicious. *See generally id.*

Indeed, despite a professed grave concern about the "serious" nature of Plaintiff's threat against Sanchez, Defendant failed to separate the employees immedi-

ately and allowed the pair to work side by side for six days after the events in question. *See* Def.'s Mot. 5; BCIR 121–22. In this intervening period, Defendant admits there were no further incidents—a circumstance a jury could find to undermine further Defendant's assertion that its unease about worker safety motivated Plaintiff's suspension. BCIR 125 (noting, on August 26, 2014, that "[t]here has not been another incident since [August 21, 2014]"); *see generally* BCIR 120–23. Moreover, in the BCIR, Defendant repeatedly records instances of Plaintiff reporting that he had made his statements to Sanchez in self-defense—not as an aggressor. *See* BCIR 121–22 ("This guy, he was grabbing me and I'm telling you now don't ever do that to me again or I will drop you"; "Rick said he felt he did what he had to do"; "[Plaintiff] felt like he had the right to defend himself against an unwanted touch.").

Importantly, there is almost no discussion of what Plaintiff alleged Sanchez did to him. *See generally* BCIR 120–123. In the BCIR, Defendant neither explains nor attempts to explain Plaintiff's marked reaction to what it surmises to be merely "happenstance" touching. *Id.* at 121. Further, it accepts Sanchez's version of events to be true—and Plaintiff's to be false—by relying primarily on a video recording that it concedes in its own report to be both without sound and "not the best quality." *See id.* The contradictions in approach and specific omissions by Defendant in its investigation raise an inference of pretext beyond that simply of an "incomplete" investigation. *Lawson*, 614 Fed.Appx. at 731.

Moreover, the incidents cited by Defendant involving violations of the Violence Prevention Policy do not show that similarly situated employees had been treated the same way that Defendant treated Plaintiff—Plaintiff is correct that his verbal reaction to unprovoked and intentional touching of his buttocks cannot be equated to a mutual shoving match between quarreling employees. *See* Pl.'s Resp. 24; App. to Def.'s Mot., Ex. H–7, Business Conduct Incident Report Regarding Carlos Camacho and Richard Aceves, ECF No. 36–1. Unlike the situation between Plaintiff and Sanchez, Plaintiff's statement that he would defend himself in the future *if* Sanchez persisted differs from the incident invoked by Defendant involving actual physical violence. *See* Def.'s Mot. 19; *Laxton*, 333 F.3d at 578. Without weighing the evidence, and drawing all inferences in favor of the non-movant, the Court concludes that Plaintiff has demonstrated a dispute of material fact as to whether Defendant's investigation preceding and justification for Plaintiff's termination was pretextual. *See Davis*, 765 F.3d at 490.

### d. Summary judgment denied as to Plaintiff's retaliation claim

Plaintiff has adduced evidence sufficient to establish his prima facie case and to raise an inference that Defendant's articulated reasoning for the employment action was pretextual. *See Fairchild*, 815 F.3d at 966. Considering the "very close" temporal proximity between Plaintiff's reporting and his suspension and termination, as well as the details of the investigation, the Court finds Plaintiff has substantiated his prima facie case. *See Breeden*, 532 U.S. at 273, 121 S.Ct. 1508. Though Defendant articulated a non-discriminatory reason for discharge—namely the violation of a company policy—Plaintiff adduces evidence that the investigation undertaken by Defendant—and its results—were "unworthy of credence" and therefore pretextual. *Lawson*, 614 Fed.Appx. at 731. Accordingly, because there remain issues of material fact as to whether Plaintiff was terminated for an unlawful reason, the Court denies Defendant's motion for summary judgment as to Plaintiff's Title VII retaliation claim.

### 3. Plaintiff's unspecified discrimination claim for reporting, complaining of, and opposing sex harassment

Plaintiff also argues in his response that Defendants "chose not to move for summary judgment on [Plaintiff's] claim for discrimination for in good faith reporting, complaining of and opposing sexual harassment and sexual assault in the workplace," behaviors he posits constitute protected conduct. *See* Pl.'s Resp. 26–27. The Court agrees with Defendant that Plaintiff, in attempting to convert this allegation into a cognizable cause of action "improperly conflates a claim of sex discrimination with [a] claim of retaliation." Def.'s Reply 2. For the purposes of a Title VII or TCHRA discrimination claim, the mere reporting of sexual harassment does not render a person a member of a protected class analogous to those of "race, color, religion, sex, or national origin." 41 U.S.C. § 2000e–2(a)(2); *see* Tex. Labor Code Ann. § 21.051 (adding disability status and age as protected categories). The act of reporting itself is protected by the portion of the law preventing retaliation. *See* 41 U.S.C. § 2000e–3(a); Tex. Labor Code Ann. § 21.055. The Court has found no cases, and Plaintiff has cited none, to support the availability of this type of discrimination claim as a distinct cause of action. *See* Pl.'s Resp. 26–27.

Further, to the extent that the discrimination of which Plaintiff provides evidence is rooted in his being "treated differently in terms of discipline" for physical threats against as opposed to sexual assault of a co-worker, the Court again was unable to find any case law supporting such a claim. *See* Pl.'s Resp. 27. For these reasons, the Court grants summary judgment on this claim.

### 4. Plaintiff's TCHRA claims

In his Complaint, Plaintiff does not specify whether his claims arise under Title VII, the TCHRA, or both. *See* Original Pet. Defendant assumes that Plaintiff's claims arise under both statutes. *See* Def.'s Mot. 4, 15. The Court does so as well.

Courts evaluate Title VII and the TCHRA claims "under the same standard." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403–04 n.2 (5th Cir. 1999)); *see also Prewitt v. Cont'l Auto.*, 927 F.Supp.2d 435, 452 (W.D. Tex. 2013) ("The analysis of a claim under the TCHRA is identical to that under Title VII, upon which the TCHRA's provisions are modeled."). Accordingly, for all the reasons set forth above, the Court denies Defendant's Motion as to both Plaintiff's TCHRA retaliation claim and Plaintiff's TCHRA sexual harassment claim to the extent he has raised them. *See Hernandez*, 670 F.3d at 650.

## C. Plaintiff's Motion

Plaintiff filed his own Partial Motion for Summary Judgment as to liability on his TCHRA sex discrimination claim and his TCHRA retaliation claim. Pl.'s Mot. 1. Plaintiff is not entitled to summary judgment on his sex discrimination claim because, as set out above, numerous fact issues exist on three of the five elements of his prima facie case. Plaintiff is also not entitled to summary judgment on his retaliation claim because, as set out above, he could not proffer sufficient proof to establish that there is no question of material fact regarding but-for causation between his complaint and his suspension and termination.

## III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following relief:

IT IS ORDERED that Defendants' Motion, ECF No. 35, is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion, ECF No. 38, is DENIED.

The Court shall issue a Trial Preparation Order separately.

SO ORDERED.